BANKERS TITLE AND ABSTRACT COMPANY, A CORPORA-
TION OF THE STATE OF NEW JERSEY, ELMWOOD
STORES, INC., A CORPORATION OF THE STATE OF
NEW JERSEY, PLAINTIFFS-RESPONDENTS, v. THE
FERBER COMPANY, CAMPBELL-MORRELL SUPPLY CO.,
MAX PLATT, INC., ZARO CONCRETE CO., INC., PEO-
PLES TRUST COMPANY OF BERGEN COUNTY, CON-
STRUCTION SPECIALTIES, INC., ALL CORPORATIONS
OF THE STATE OF NEW JERSEY, DEFENDANTS-RE-
SPONDENTS, AND UNION BUILDING AND INVESTMENT
CO., AND UNITED STATES OF AMERICA, DEFEND-
ANTS-APPELLANTS.

MAX PLATT, INC., A CORPORATION OF THE STATE OF
NEW JERSEY, PLAINTIFF, v. ELMWOOD STORES, INC.,
A CORPORATION OF THE STATE OF NEW JERSEY,
DEFENDANT.

Argued April 26, 1954—Decided May 14, 1954.

Mr. *Charles H. Hoens, Jr.,* argued the cause for the appellant United States of America (*Mr. William F. Tompkins,* United States Attorney, attorney).

Mr. *Hugh C. Spernow* argued the cause for the appellant Union Building and Investment Co. (*Messrs. Wallisch & Wallisch,* attorneys).

Mr. *Charles Rubenstein* argued the cause for the respondents Max Platt, Inc., Campbell-Morrell Supply Co., and Construction Specialties, Inc. (*Mr. Leslie P. Glick* on the brief; *Messrs. Rubenstein & Glick,* attorneys for Max Platt, Inc., *Messrs. Werksman, Saffron & Cohen,* attorneys for Campbell-Morrell Supply Co., *Mr. Arnold M. Smith,* attorney for Construction Specialties, Inc.).

The opinion of the court was delivered by

BURLING, J. This appeal stems from an action of interpleader by Bankers Title and Abstract Company (hereinafter called Bankers Title), a New Jersey corporation, plaintiff, in which Elmwood Stores, Inc., (hereinafter called Elmwood), a New Jersey corporation, subsequently was joined as a party plaintiff, filed on August 18, 1952 in the Superior Court, Chancery Division. Judgment of interpleader was entered on February 17, 1953 requiring the plaintiffs to pay into the Superior Court the sum of $18,737.45, allowing them taxed costs and a counsel fee, to be paid to

them by the clerk of the court out of the fund so deposited, and exonerating them from any liability to the defendants, namely The Ferber Company (hereinafter called Ferber), Campbell-Morrell Supply Co., (hereinafter called Campbell), Union Building and Investment Co., (hereinafter called Union), Max Platt, Inc., (hereinafter called Platt), Construction Specialties, Inc., (hereinafter called Specialties), Peoples Trust Company of Bergen County, (hereinafter called Peoples Trust), Zaro Concrete Co., Inc., (hereinafter called Zaro) and The United States of America, (hereinafter called the United States). The judgment of interpleader also dismissed the action as against defendants Ferber and Zaro by virtue of their denial of interest in the fund. The several remaining defendants above named were required by the judgment to interplead their respective claims to the fund, namely the $18,737.45 deposited in court, less the taxed costs and $1,000 counsel fee adjudged in favor of the plaintiffs Elmwood and Bankers Title. Subsequently final judgment was entered in the Superior Court, Chancery Division, on October 13, 1953 settling the respective rights of the interpleading defendants to the balance of the fund in question. It is from this final judgment that the present appeals were taken by the United States and by Union. The appeals were addressed to the Superior Court, Appellate Division, but prior to hearing there were consolidated and were certified on our own motion.

The facts in this matter were settled by stipulation and the interpleading defendants expressly agreed that the pretrial order supersede the pleadings insofar as their contentions concerning their respective claims to the fund were in issue.

The factual situation developed in the stipulation of the parties is complex. Elmwood, owner of the land in East Paterson, Bergen County, New Jersey, on August 30, 1950 entered into a written contract with Ferber, as general contractor, for the erection and construction of a shopping center on Elmwood's land. Prior to the inception of work, the

building contract with a copy of the specifications was filed, September 6, 1950, in the office of the Clerk of Bergen County. Zaro entered into a subcontract (for concrete and other work) with Ferber. Zaro then entered into agreements with Platt, Campbell, Specialties and Union to furnish "materials, etc.," which were used in connection with the erection and construction of the shopping center for Elmwood.

On May 23, 1951 Zaro executed an assignment to Union of all Zaro's interest to the extent of $10,154.04 in moneys due or to become due to Zaro from Ferber under the subcontract hereinbefore mentioned. And on September 27, 1951 Zaro executed a comparable assignment to the extent of $768.45 to Peoples Trust. Copies of these assignments were served on Ferber, and the latter acknowledged receipt thereof.

Platt, Campbell and Specialties performed their respective agreements, and there became due and owing to them from Zaro under these agreements the following sums: Platt, $7,778.20; Campbell, $525; and Specialties, $691.19. They made demand on Zaro for payment, which was refused.

Thereupon Campbell filed a stop notice against Elmwood on February 19, 1952, and Platt filed a stop notice against Elmwood on March 21, 1952. Copies of these stop notices were duly served upon Elmwood, Ferber and Zaro.

On May 6, 1952, a final sum of $202,776.09 became due and owing from Elmwood to Ferber under the construction contract of August 30, 1950 hereinabove mentioned. It was also stipulated that on the same day, May 6, 1952, there became due and owing from Ferber to Zaro, under their subcontract, the sum of $18,737.45.

Elmwood, on May 7, 1952, paid Ferber $184,038.64 and retained $18,737.45 which sum on the same day, Elmwood, with Zaro's consent, deposited with Bankers Title as Elmwood's escrow holder, reciting the fact that claims thereto had been made by the United States, Campbell, Platt and Union.

On July 3, 1952 Platt instituted an action in the Superior Court, Law Division, against Elmwood, on the claim represented by its stop notice, *ante*.

Specialties subsequently, on August 7, 1952, filed a stop notice against Elmwood, and copies were served on Elmwood, Ferber and Zaro.

It is observed that it was stipulated by all parties that the claims of Platt, Campbell and Specialties hereinbefore adverted to were undisputed in amount, and unpaid. Zaro admitted that the amount due Union was $10,154.04 and admitted that the amount due Peoples Trust was $768.45. Zaro further admitted in the stipulation of facts and pretrial order in the present matter that at the time thereof there was due from Zaro to the United States the sum of $52,152.43.

Insofar as the claims of the United States are concerned, it was stipulated by all parties to the present action that these claims consisted of assessments against Zaro for unpaid income, federal insurance contributions, federal unemployment and federal withholding taxes, notices of unpaid assessments thereon having been filed in the Bergen County Clerk's office on various dates since May 21, 1949. A levy on certain of these assessments (specific identification is not disclosed by the stipulation) was made on Ferber, in the amount of $37,328.43, on January 31, 1952. A list of assessments and dates of recording thereof was incorporated in the pretrial order and stipulation of facts (examination of the assessments listed demonstrates that Zaro as of August 7, 1952, owed the United States upwards of $110,000 in unpaid assessments). An amendment to the pretrial order eliminated some of these assessments as claims herein, but more than $80,000 in unpaid assessments, one of which was for $25,933.48 and had been recorded June 16, 1950, remained outstanding.

Bankers Title filed the complaint in interpleader, in the Superior Court, Chancery Division, on August 18, 1952,

making Elmwood, Ferber, Zaro and the respective creditors of Zaro hereinbefore mentioned, parties defendant. During the course of proceedings subsequent thereto orders were entered in the Chancery Division consolidating Platt's Law Division action against Elmwood with the interpleader action in the Chancery Division, and joining Elmwood as a party plaintiff, and eliminating Elmwood as a party defendant in the latter action.

The stipulation of fact and pretrial order hereinbefore discussed having been filed, judgment of interpleader was subsequently entered in the Superior Court, Chancery Division, on February 17, 1953 requiring Bankers Title to deposit the sum of $18,737.45 in the Superior Court, allowing taxed costs including a counsel fee of $1,000 to Elmwood and Bankers Title as plaintiffs, exonerating them from liability to the defendants, and dismissing the action of interpleader as to defendants Ferber and Zaro who claimed no interest in the deposited funds. Campbell, Platt, Specialties, Union, Peoples Trust and the United States then interpleaded their claims to the fund. The final judgment of the Superior Court, Chancery Division, entered October 13, 1953, adjudged that the stop notice claims of Campbell, Platt and Specialties were entitled to priority over the other claimants, adjudged that the United States' tax claims were entitled to priority over Union and Peoples Trust, who claimed by way of assignment, allowed taxed costs and counsel fees to Campbell, Platt and Specialties, and allowed counsel fees to defendants Zaro, Union and Peoples Trust. The judgment ordered the Clerk of the Superior Court to make the distribution adjudged.

The United States and Union filed appeals to the Superior Court, Appellate Division. Prior to hearing there these appeals, which were consolidated, were certified on our own motion. It is noted that Elmwood, Bankers Title, Ferber, Zaro and Peoples Trust have not joined as appellants or appeared as respondents in this appeal.

The question involved in the appeal of the United States is whether it has priority over the respective stop notice claimants and assignees.

The questions involved in Union's appeal are: (1) whether it as a *bona fide* assignee has a claim prior to that of the United States, and (2) whether costs and counsel fees allowed should be borne proportionately by those entitled to the fund.

## I.

The principal question involved in these appeals is whether the stop notice claimants, Campbell, Platt and Specialties, or any of them, were properly adjudged to have priority over the United States in the distribution of the fund deposited in court. We are of the opinion that the claims of Campbell and Platt were entitled to the priority adjudged but that the claim of Specialties was not entitled to such priority.

The United States claims priority over the stop notice claimants by virtue of 53 *Stat.* 448, 26 *U. S. C. A., sec.* 3670, and 53 *Stat.* 449, 26 *U. S. C. A., sec.* 3671. These two statutory provisions read as follows:

26 *U. S. C. A. sec.* 3670. "Property subject to lien
If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. 53 *Stat.* 448."
26 *U. S. C. A. sec.* 3671. "Period of lien
Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time. 53 *Stat.* 449."

There is no question raised in this matter as to the existence or sufficiency of demand under 26 *U. S. C. A., sec.* 3670, *supra*. The principal issue is whether the federal tax lien reaches the funds required for payment of the materialmen's

claims where the materialmen have filed timely stop notices under the New Jersey Mechanics Lien Law.

The United States appears to contend that stop notice claimants acquire only an inchoate right in the fund, and not a lien, within the purview of *United States v. Security Trust & Sav.*, 340 *U. S.* 47, 50–51, 71 *S. Ct.* 111, 95 *L. Ed.* 53, 56–57 (1950). In the *Security Trust* case, *supra,* the federal tax lien and an attachment under a state statute were applicable to the same property. The state appellate courts had determined such an attachment to create merely an inchoate right and not a lien. The United States Supreme Court approved and adhered to this conclusion and determined that under those circumstances the federal lien, which was a perfected lien, was entitled to priority over the attachment. *Cf. United States v. Albert Holman Lumber Co.*, 208 *F. 2d* 113 (*C. C. A.* 5 1953). Compare *Samms v. Chicago Title & Trust Co.*, 349 *Ill. App.* 413, 111 *N. E. 2d* 172 (*App. Ct.* 1953).

The situation in the matter before us is not comparable to the circumstances obtaining in either the *Security Trust* case, *supra,* or the *Albert Holman Lumber Co.* case, *supra.* In the present case the United States has a lien, if at all, on only the funds to which the subcontractor, Zaro, may be entitled. The federal lien attaches only to the property of Zaro. The ruling principle in this respect, expressed in the federal courts, is that the rights of the United States (*i. e.,* the Collector of Internal Revenue or his counterpart) do not extend beyond those of the taxpayer whose right to property is sought to be levied on. *United States v. Graham,* 96 *F. Supp.* 318, 321 (*D. C. Cal.* 1951), affirmed *per curiam, State of California v. U. S.,* 195 *F. 2d* 530 (*Case* 4) (*C. C. A.* 9 1952), *cert.* den. 344 *U. S.* 831, 73 *S. Ct.* 36, 97 *L. Ed.* 647 (1952); *Karno-Smith Co. v. Maloney,* 112 *F. 2d* 690 (*C. C. A.* 3 1949); *F. H. McGraw & Co. v. Sherman Plastering Co.,* 60 *F. Supp.* 504 (*D. C. Conn.* 1943), affirmed 149 *F. 2d* 301 (*C. C. A.* 2 1945), *cert.* den. 326 *U. S.* 753, 66 *S. Ct.* 92, 90 *L. Ed.* 452 (1945). *Cf. United States v. Kauf-*

*man,* 267 *U. S.* 408, 45 *S. Ct.* 322, 69 *L. Ed.* 685, 688–689 (1925).

In *Meyer v. Standard Accident Insurance Co.,* 114 *N. J. L.* 483, 486 (*E. & A.* 1935), the former Court of Errors and Appeals held in an opinion written by Judge Wells:

"* * * under the sixth section [now *N. J. S.* 2A :44–86] of the Mechanics' Lien Act a stop notice materialman had priority over an assignee or person having an order. * * * the money was still for all practical purposes in the hands of the owner, who could not disregard the stop notice and pay subcontractors who had orders or assignments."

Judge Wells further wrote in the *Meyer* case, *supra* (114 *N. J. L.,* at *pp.* 487–488) :

"*When a building contract,* with the specifications, *is duly filed* with the clerk of the county in which the building or land is situate, *the owner is then liable to the contractor alone for the work done and materials furnished.* * * * (*Comp. Stat. Supp.* 1930, § 126–2).

*When the contract and specifications are so filed, laborers and materialmen have inchoate liens against the owner* for the amounts due them for the labor performed and materials furnished. 3 *Comp. Stat.* 1910, *p.* 3298, § 5. *These inchoate liens can be perfected only by taking the necessary steps provided by section* 3 of said act. *Cum. Supp. Comp. Stat.* (1925-1930, § 126–3, *p.* 951, § 3, &c., *Bayonne Building Association v. Williams,* 59 *N. J. Eq.* 617. *When such a lien is so perfected, it gives the stop notice claimant preference over holders of assignments* or orders from the contractor, *whether or not the same were submitted to the owner before or after the filing of the stop notice.* *Cum. Supp. Comp. Stat.* 1925-1930, § 126–6, *p.* 954; *Leary v. Lamont,* 42 *Atl. Rep.* 97 (*N. J. Ch.*) ; *Pinsky, &c., v. Wike,* 101 *N. J. Eq.* 45; affirmed, 103 *Id.* 18). Such stop notice operates on sums due from the owner to the contractor, sums to grow due, and sums still unpaid after maturity of the payment date. *Bowden v. Baier,* 99 *N. J. L.* 361; *Decker, &c., Co. v. Meyer, supra.*

*After a stop notice has been filed, the owner is required to withhold payments to the contractor until the stop notice claimant is* satisfied up to the amount due, or to grow due, on the contract. Section 3, *supra.* Such duty cannot be avoided either by making payment to the contractor (section 5, *supra*), by acceptance of an order or assignment of the contractor (*Pinsky, &c., v. Wike, supra*), or by making payments in advance of the requirements of the contract." (Emphasis supplied.)

The *Decker* case adverted to in the opinion of the former Court of Errors and Appeals in the *Meyer* case, *supra,* and an earlier decision in the same series of litigation, was *Decker Bldg. Material Co. v. Meyer,* 109 *N. J. L.* 408, 409–410 (*E. & A.* 1932). It was determined therein that a stop notice materialman had priority over a subcontractor's assignee or a person having an order. There appears to have been doubt in the *Decker* case, *supra,* as to whether the buildings to be erected under the filed general contract had been completed, but the former Court of Errors and Appeals held "the money was still for all practical purposes in the hands of the owner, who could not disregard the stop notice and pay subcontractors who had orders or assignments." *Cf. Arrow Builders Supply Corp. v. Hudson Terrace Apartments, Inc.,* 15 *N. J.* 418 (1954). See also *N. J. S.* 2A:44–85.

The conclusion necessarily follows that where the stop notice is filed and served upon the owner before the general contract funds are distributed by the owner, the remaining funds in the hands of the owner must be retained by him for the payment of the stop notice materialman or supplier of labor. Compare *National Surety Corp. v. Barth,* 11 *N. J.* 506, 511–515 (1953). This results in the conclusion that the contractor (or, in this case, the subcontractor Zaro) has no property right in so much of the fund in the hands of the owner as is necessary for payment of the claim of the one who filed the stop notice. His (Zaro's) property right under his contract is "inchoate." Compare *United States v. Security Trust & Sav., supra.* Although the federal tax lien attaches to that "inchoate" right, it is not sufficient to enlarge it. The lien of the government can rise no higher than the right of the contractor (in the present matter, Zaro). *Cf. Robertson v. Huntley & Blazier Co.,* 351 *Ill. App.* 378, 115 *N. E.* 2d 533, 535–537 (*App. Ct.* 1953).

We reiterate that Campbell and Platt were correctly adjudged to have prority of claim over the federal tax liens against Zaro under the circumstances of this case.

The claim pressed by Specialties, however, is not so easily disposed of. Specialties filed its stop notice *after* the contract price had been paid over by Elmwood, the owner. The final sums due the general contractor Ferber had been paid to Ferber and to Bankers Title, the latter holding the amount due Zaro, $18,737.45, in escrow for the payment of Campbell, Platt, Union and the United States according to the priorities of their claims thereto. It was stipulated that this occurred May 7, 1952, and Specialties filed its stop notice one month later.

■ Application of the principles hereinbefore discussed to these circumstances shows that Zaro's property right to funds other than those placed in escrow for payment to Campbell and Platt matured on May 7, 1952. On this date he or his assignees would have been paid had not the federal tax lien induced Elmwood to deposit the balance of the fund in escrow. The property right in the funds thus maturing, the federal lien could and did attach thereto, to the exclusion of the stop notice filed a month later by Specialties. Elmwood was protected by the distribution in this respect by virtue of the mechanics lien law. See *N. J. S.* 2*A* :44–77, 78, 81.

## II.

■ The second of the principal questions involved is whether Union, as assignee of Zaro, is entitled to priority over the federal tax lien against Zaro. The federal tax lien in the amount of $25,933.48 against Zaro hereinbefore noted was recorded June 16, 1950. The assessment thereof was received by the Collector of Internal Revenue on March 9, 1950 and demand was made by the Collector on March 10, 1950. Therefore the lien attached to all rights of Zaro, including rights maturing subsequently, no later than June 16, 1950. 26 *U. S. C. A.* 3670, 3671 and 3672. Union's assignment was not executed by Zaro until May 23, 1951. Under these circumstances the federal tax lien was clearly superior

to and entitled to priority over Union's assignment. It is observed without particularization that other federal tax liens still outstanding against Zaro, insofar as these facts appear in the record, were likewise entitled to priority over Union's assignment. *Citizens State Bank of Barstow, Texas, v. Vidal,* 114 *F.* 2*d* 380 (*C. C. A.* 10 1940).

## III.

Union has questioned the allowances of costs and counsel fees made by the Superior Court, Chancery Division. No appeal in this respect is asserted by the United States. Under these circumstances this question involved is moot since Union has no rights in the fund. We see no occasion to disturb the allowances of costs and counsel fees made by the Superior Court, Chancery Division.

Costs of all parties to this appeal shall be paid out of the fund in court.

## CONCLUSION

For the reasons expressed in this opinion the judgment of the Superior Court, Chancery Division, will be modified by exscinding therefrom the award to Construction Specialties, Inc., of $691.19 and interest thereon. As so modified the judgment of the Superior Court, Chancery Division, is affirmed. Costs are allowed in accordance with this opinion.

*For modification*—Chief Justice VANDERBILT and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.