Alan E. SOLOMON, Petitioner,

v.

Chris L. GROSS, District Director of Internal Revenue, Defendant.

Civ. No. 1321-58.

United States District Court
D. New Jersey.

Sept. 1, 1959.

Carl H. Auerbach, Camden, N. J., for petitioner.

Chester A. Weidenburner, U. S. Atty., Newark, N. J., John H. Mohrfeld, III, Asst. U. S. Atty., Camden, N. J., David E. Crabtree, Office of Regional Counsel, I. R. S., Philadelphia, Pa., of counsel, for defendant.

MADDEN, District Judge.

This action was instituted by the petitioner, Alan E. Solomon, first, for a permanent injunction restraining the public auction sale of seven Fruehauf trailers seized by the defendant, District Director of Internal Revenue, in order to satisfy Federal liens for the unpaid tax liability of Thomas and Delilah Boccuto, and, second, for an adjudication declaring the petitioner to be the owner of said trailers free and clear of the aforementioned encumbrances. The action was commenced by petition and order to show cause. The order to show cause was issued with accompanying restraints. The matter was heard on the return day and thereupon taken under advisement by the Court.

Pending the determination of this matter the parties stipulated to private sale of the trailers and deposit of the proceeds in the Registry of the Court. Accordingly, an order of the Court was entered. Sale of the seven trailers for a sum of $7,350 was confirmed by the Court and the proceeds therefrom were deposited in the registry.

The material facts are not disputed. On September 15, 1958, the defendant made a levy and seizure of the assets of Thomas and Delilah Boccuto and Boccuto Motor Freight, Inc. on account of delinquent Federal taxes. Among the property seized were twenty-four trailers situated on a lot adjacent to the offices of Boccuto Motor Freight, Inc. at Second and Beckett Streets in Camden, New Jersey, and certain real property belonging to Thomas and Delilah Boccuto. On September 16, 1958, Thomas Boccuto satisfied the then established joint liability of his wife, Delilah, and himself and secured the release of the real property. He also demanded the release of the twenty-four trailers which had been seized as the property of Boccuto Motor Freight, Inc. claiming them to be his property but he was unable to secure their release.

Subsequently, on September 17, 1958, the Commissioner of Internal Revenue made two income tax assessments against Thomas and Delilah Boccuto, hereinafter referred to as the taxpayers, in the aggregate amount of $38,534.53.[1] On the same day notice and demand for payment were made, levies were served and a seizure was made of all the taxpayers' assets, including the twenty-four trailers previously seized by the defendant. On September 18, 1958, notices of tax liens were filed in the office of the Clerk of Camden County, New Jersey, said county being the domicile of the taxpayers and the county in which the trailers were then located.

On September 20, 1958, the petitioner, a dealer in the business of buying and selling used tractors and trailers, met Thomas Boccuto on the lot of Applegate's Trailer Sale Yard at Wheat Chief Lane and Thompson Street, Philadelphia, Pennsylvania, and during the course of a conversation between them, Boccuto indicated that he had some trailers for sale. This precipitated the arrangement of an appointment to meet the following day for the purpose of transacting business. Thus, on September 21, 1958, the petitioner met Boccuto at the pre-designated location of 25th and Tasker Streets, Philadelphia, Pennsylvania, examined seven trailers which Boccuto stated were for sale and consummated a purchase of the same. The petitioner gave Boccuto a check in the amount of $6,300 in return for which he received an assignment of Pennsylvania certificate of title for each of the seven trailers (copies of which are attached to the petitioner's affidavit as Exhibits A and B). The seven trailers were then moved, by petitioner, to Al's Trailer Service on Route 73, Maple Shade, New Jersey, where they were again attached by the defendant as the property of Thomas and Delilah Boccuto. It was not until September 26, 1958, that the petitioner discovered that the trailers had been seized, and the next day he learned the seven trailers were previously encumbered by Federal liens and had been seized on September 17, 1958, along with seventeen other trailers.

On November 25, 1958, the Director posted notices of public auction sale whereby he advertised the sale of the seven trailers purchased by the petitioner, as well as other property of the taxpayers, in order to satisfy the Federal liens imposed thereon. Shortly thereafter this action was instituted.

First, it is contended by the petitioner that since the property subject to the liens, the seven trailers, were situated in Philadelphia, Pennsylvania, and the defendant failed to file notices of tax liens in Philadelphia County, Pennsylvania,

---

1. The two assessments are designated as Account Numbers 58–D–2027 and 58–D–2028. Additional income tax assessments were levied against the taxpayers, the enumeration of which is unnecessary to the disposition of the present matter.

prior to the sale, the Federal tax liens are not valid as against him, a subsequent purchaser. Secondly, the petitioner contends that the notices of tax liens filed in Camden County, New Jersey, prior to the sale do not constitute constructive notice to him as a purchaser of the trailers in the State of Pennsylvania.

There is no dispute concerning the fact that the petitioner is a subsequent bona fide purchaser of the trailers in Pennsylvania and that he had no actual notice of the existence of the Federal tax liens. The pivotal issue is confined to the question of constructive notice; thus, is the filing of the notices of tax liens in the office of the Clerk of Camden County, New Jersey, sufficient to create valid liens as against the petitioner who subsequently purchased the trailers in Pennsylvania without actual notice of said liens?

■ A lien arises in favor of the United States upon all property, real or personal, belonging to a taxpayer who is liable to pay any tax and who neglects or refuses to pay the same after demand has been made.[2] The date of the lien, unless otherwise provided by law, is the date of making the assessment and the lien continues in effect until satisfied.[3] However, this lien is not valid as against any purchaser until notice thereof has been filed in the office designated by the law of the State in which the property subject to the lien is situated, whenever the State has by law designated an office within the State for the filing of such notice.[4]

In an attempt to comply with the last mentioned statute the defendant filed the notices of tax liens in New Jersey, in the office of the Camden County Clerk on September 18, 1958, three days prior to the sale to the petitioner. No notice was filed by the defendant in the Commonwealth of Pennsylvania until after the sale.

Thus, to determine the validity of the liens in question as against the petitioner, it is incumbent upon the Court to decide whether the seven trailers were situated in the State of New Jersey at the time of the filing of the notices and whether the liens were perfected in accordance with the Federal statute, 26 U.S.C.A. § 6323(a)(1) and the implemental New Jersey statute, N.J.S.A. 46:16–13.[5]

It is argued by the petitioner that the situs of the trailers is Philadelphia, Pennsylvania, where they were located at the time of the sale to petitioner, and not Camden County, New Jersey, the domicile of the taxpayers. Counsel for the petitioner cites the case of Gulf Coast Marine Ways v. The J. R. Hardee, D.C. Tex.1952, 107 F.Supp. 379, in support of his argument. In that case the Government filed its notice of tax lien with the Clerk of the Louisiana Parish wherein the taxpayers resided and not in the Orleans Parish wherein the property subject to the lien (a shrimping vessel, The J. R. Hardee) was located. It was concluded by the Court that the Government did not obtain its lien nor its priority as to said property. The Court was per-

2. 26 U.S.C.A. § 6321.

3. 26 U.S.C.A. § 6322.

4. 26 U.S.C.A. § 6323(a) (1). This section provides:
"* * *, the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate—
"(1) In the office designated by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law designated an office within the State or Territory for the filing of such notice."

5. N.J.S.A. 46:16–13 provides:
"Notices of federal tax liens * * * which * * * are made a lien upon all the property * * * belonging to the persons against whom federal taxes are or may be assessed may be filed in the office of the county recording officer of the county or counties wherein the property subject to such liens is situate, * * *
"No federal tax shall be a valid lien as against any * * * purchaser * * until notice thereof shall be filed as provided by this section."

suaded that the situs of the property was the parish where the vessel had its home port.

Although this case appears to support the proposition of the petitioner that notice must be filed in the county and State in which the property subject to the liens is physically located and not the county and State of the taxpayers' domicile, this Court does not feel that it is authority supporting the argument of the petitioner in this case. The only facts before the Court upon which the petitioner bases his argument are: (1) the trailers were physically located in Philadelphia at the time of the sale which was three days after the notices were filed in Camden County, New Jersey, (2) seven Pennsylvania certificates of title were used to effect the transfer of the seven trailers, and, (3) the sale occurred in Philadelphia.

On the other hand, the defendant contends that the notices were properly filed in Camden County, New Jersey, at the domicile of the taxpayers. In this connection it should be noted of the case at bar: (1) that at the time the notices of tax liens were filed the trailers were physically located at Second and Beckett Streets, Camden, New Jersey, and constituted a part of the twenty-four trailers that were then under the seizure of September 15, 1958, (2) that said trailers were seized a second time at the aforesaid location, namely, on September 18, 1958, by virtue of the tax liens in question, (3) that the trailers were obviously moved from that location sometime after September 18, 1958, and before the day of the sale, September 21, 1958, when they were examined by the petitioner in Philadelphia, Pennsylvania, (4) that, although it does not appear in the facts of this matter that the trailers were used in the business of Boccuto Motor Freight, Inc. which had its principal place of business in Camden, New Jersey, the trailers were located at the Camden, New Jersey site on a lot adjacent to the offices of Boccuto Motor Freight, Inc., presumably where they were stored by the taxpayers when not in use, (5) that the certificates of title indicated on the face thereof that the residence of the taxpayers was 505 Cooper Street, Camden, New Jersey, and, (6) that after the sale on September 21, 1958, the trailers were moved by the petitioner back to New Jersey.

It would, therefore, appear that it is upon the temporary location of the trailers in Pennsylvania at the time of the sale that the petitioner would have the Court base its determination as to situs rather than upon the more permanent and substantial location of the trailers in Camden County, New Jersey. The Court cannot accept this proposition nor is it convinced that such a proposition is supported by the authority of Gulf Coast Marine Ways v. The J. R. Hardee, supra.

A similar argument was advanced in the case of Grand Prairie State Bank v. United States, 5 Cir., 1953, 206 F.2d 217, at page 219, and the Court there stated:

"It is argued that because of the transitory nature of the property in question, (rings) and of personal property in general, the notices of tax liens recorded in Tarrant County are ineffective to give constructive notice to a mortgagee or pledgee that acquired its claim against the property after it was removed from that county. Appellant recognizes the general principle that the situs of personal property is regarded as being the same as the domicile of its owner, but urges that when the property was reduced to its possession in Dallas County it acquired a situs in that county and the failure of the United States to have its liens recorded there defeats its claim. The statute, however, does not require a tax lien to be filed in every county to which personal property may be carried in order to be enforceable against a subsequent mortgagee or pledgee. The requirement that notice of lien be filed in the office in which the filing of such notice is authorized by the law of the state in which the property subject to the lien is situated is satisfied, so far as is pertinent here, when such notice is

filed in the county of the taxpayer's domicile. (Citing cases.) It is the transitory nature of personal property which requires the application of this rule. To hold otherwise, would be to overlook the practical necessities of the situation and would require the Collector to file tax liens in every jurisdiction to which the taxpayers may at any time remove the property. We do not think this result was intended by the statute, nor do the laws of Texas relating to the recording of liens against personal property require a different result." [6]

Counsel for the petitioner also cites the case of United States v. Delaware Trust Company, D.C.Del.1958, 167 F.Supp. 465, where it was held by the Court that the situs of a trust of realty was not the residence of the taxpayer but rather the locus of the property. Inasmuch as the property in question in the instant case is trailers and not real property, the Court feels that the Delaware Trust Company case is clearly distinguishable.

■ There can be no doubt but that the seven Fruehauf trailers are personal property. They are extremely mobile and can pass from county to county or state to state in a relatively short period of time. The generally accepted principle of law regarding the situs of personal property is that the situs of personal property is determined to be that of the domicile of the owner. For the application of this principle in other federal tax lien cases see: Investment & Securities Co. v. United States, 9 Cir., 1944, 140 F.2d 894; Grand Prairie State Bank v. United States, 5 Cir., 1953, 206 F.2d 217; Marteney v. United States, 10 Cir., 1957, 245 F.2d 135; United States v. Spreckles, D.C.Cal.1943, 50 F.Supp. 789; and United States v. Royce Shoe Company, D.C. N.H.1956, 137 F.Supp. 786. The domicile of the taxpayers was Camden Coun-

ty, New Jersey, hence, applying the above stated principle it may be said that the trailers in question were situated in Camden County, New Jersey.

■ Therefore, considering the facts of the case at bar, the Court feels that the situs of the property in question is Camden County, New Jersey, where the taxpayers were domiciled and where the physical location of the property is established with a greater degree of permanency. Thus, the Federal tax liens were properly filed and perfected in accordance with the Federal and New Jersey statutes and the Government has valid liens as against the petitioner who is charged with constructive notice thereof. To hold otherwise, as stated in Grand Prairie State Bank v. United States, supra, would be to require the Government to file notices of tax liens in every county of the state or in every state of the nation to which property of such a movable nature could be moved or temporarily located in order to protect its interest. This, in the Court's opinion, is beyond the contemplation of Section 6323(a)(1) of Title 26 of the United States Code.

The Court is mindful of the possibility of the removal of personal property encumbered by Federal tax liens and sale of the same by designing taxpayers to innocent purchasers of another state in order to avoid the Government's liens. The Court also recognizes the injury suffered by the innocent purchaser in this case and takes refuge in the axiom, "Caveat emptor, qui ignorare non debuit quod jus alienum emit (Let a purchaser beware, who ought not to be ignorant that he is purchasing the right of another)," for the petitioner should have searched the records of the county of the taxpayers' domicile since the certificates of title themselves indicated the residence of the taxpayers to be Camden County, New Jersey. This would have

---

**6.** It should be observed that Grand Prairie State Bank v. United States, supra, was decided by the Court of Appeals for the Fifth Circuit while Gulf Coast Marine Ways v. The J. R. Hardee was an earlier case out of the District Court for the Southern District of Texas within the Fifth Circuit.

been a much simpler task to require of a purchaser than to require the Government to file notices in each state to which the property in question may have been removed.

In conclusion, the Court must state that the defendant is entitled to the proceeds from the sale of the seven trailers on deposit in the Registry with the Clerk.

Counsel will prepare an appropriate order.