78 N.J. Super. 554 (1963)
189 A.2d 738
ALBERT SPADE, INDIVIDUALLY AND T/A SPADE IRON WORKS, PLAINTIFF,
v.
THE SALVATORIAN FATHERS, MOTHER OF SAVIOR SEMINARY, A RELIGIOUS CORPORATION, AND PAGANO CONSTRUCTION CO., INC., A CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 27, 1963.
*556 Mr. William C. Gotshalk, attorney for plaintiff.
Mr. Robert E. Gladden for defendant Interstate Iron and Supply Company (Messrs. Ross and Gladden, attorneys).
Mr. David M. Satz, Jr., United States Attorney (Mr. Herbert S. Jacobs, Assistant United States Attorney appearing), for the United States Government.
PASCOE, J.C.C. (temporarily assigned).
This is a supplementary proceeding by two creditors seeking priority to a fund now deposited in court.
The Federal Government filed a tax lien in Camden County against Albert Spade, individually and t/a Spade Iron Works (hereinafter Spade) on April 20, 1960. Interstate Iron and Supply Company (hereinafter Interstate) recovered a judgment against Spade on May 1, 1960; subsequently, Spade brought an action against The Salvatorian Fathers in its capacity as subcontractor for the construction of the seminary. The Salvatorian Fathers filed an interpleader naming *557 Spade and Pagano Construction Co., Inc., the contractor, on July 26, 1961.
Funds were deposited with the Clerk of the Superior Court on August 8, 1961 in Trenton, New Jersey. On December 1, 1961 settlement and judgment were entered in favor of Spade in the amount of $2,000. On September 27, 1961 Interstate executed and levied on the fund deposited with the Clerk of the Superior Court. The Federal Government claims priority in the same fund to the extent of its lien filed April 20, 1960. It is to be noted that Spade is domiciled in Camden County, as is defendant The Salvatorian Fathers, and the contract for the construction of the seminary was to be performed in Camden County.
The issue before this court is: Does the filing of a tax lien by the Federal Government in Camden County place a lien upon the funds belonging to the delinquent taxpayer and deposited in Trenton with the Clerk of the Superior Court, so as to perfect this lien against a subsequent judgment creditor.
The Federal Government's lien is a creature of the following legislation:
26 U.S.C.A., § 6321:
"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal belonging to such person."
26 U.S.C.A., § 6323:
"[T]he lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser or judgment creditor until notice thereof has been filed by the secretary or his delegate * * * [i]n the office designated by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law designated an office within the State or Territory for the filing of such notice."
New Jersey has provided for the filing of such liens in 46:16-13:
*558 "Notices of Federal tax liens * * * which * * * are made a lien upon all the property * * * belonging to the persons against whom Federal taxes are or may be assessed, may be filed in the office of the county recording officer of the county or counties wherein the property subject to such liens is situate. * * * No Federal tax lien shall be a valid lien as against a mortgagee, purchaser or judgment creditor until the notice thereof shall be filed as provided by this section."
On April 20, 1960 the Federal Government, by filing a lien in Camden County, the domicile of the delinquent taxpayer, had perfected its lien as against a subsequent judgment creditor. This lien covers all the real and personal property, tangibles and intangibles, rights to property or choses in action, as well as after acquired property of the delinquent taxpayer. Glass City Bank v. United States, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945); Edison Bank v. Mayer, 202 F. Supp. 620 (D.N.J. 1962); Beeghly v. Wilson, 152 F. Supp. 726 (D. Iowa 1957).
Of course, the rights of the Federal Government can rise no higher than the rights of the delinquent taxpayer, and state law determines whether the taxpayer has any property or right to property to which the lien can attach. Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); United States v. Brosnan, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960); Bankers Title & Abstract Co. v. Ferber Co., 15 N.J. 433 (1954); Spagnuolo v. Bonnet, 16 N.J. 546 (1954). The determination of priority of competing liens on the same property is however a federal question. United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1954).
When Spade filed suit against The Salvatorian Fathers he was possessed of a chose in action to which the lien of the Federal Government attached. It has been held that a property right of a delinquent taxpayer may be born with a federal tax lien on it, and when the lien attaches the Federal Government becomes, in a sense, co-owner with the taxpayer of the property to the extent of the lien, and the taxpayer ceases to have an unconditional right to obtain or retain *559 possession of the property. Simpson v. Thomas, 271 F.2d 450 (4 Cir. 1959); Keystone Mercantile Corporation v. Graham, 192 F. Supp. 90 (D. Pa. 1961); Wolverine Ins. Co. v. Phillips, 165 F. Supp. 335 (D. Iowa 1958).
Thus it is obvious that the Federal Government had a perfected lien which attached to the chose in action of the delinquent taxpayer. This lien would be prior to the lien of the judgment creditor because it was filed in Camden County, the location of the chose itself and the domicile of the owner thereof, and would be notice to the judgment creditor. Investment & Securities v. United States, 140 F.2d 894 (9 Cir.). It is the contention of Interstate that prior to December 1, 1961 Spade was possessed of an inchoate right to the fund in court to which the federal lien did not attach. Reliance for this statement is placed on Spagnuolo v. Bonnet, supra. In Spagnuolo money was seized by the County of Essex as part of a gambling raid, pursuant to statutory authority. The Government filed its lien subsequent to the seizure. In a supplementary proceeding in which a third party claimed title to the money, defendant Spagnuolo defaulted and the third party did not sustain its burden of proof. In this posture it was held that the lien of the Federal Government was invalid as against the title of the county. In view of the fact of the default of Spagnuolo, the delinquent taxpayer, and the seizure by the county before the Government filed its assessment list, the opinion seems sound but not applicable in the instant case. It should be pointed out that the court did say that "At most the federal lien could only attach to Spagnuolo's inchoate right to sue for the return of the funds in the event of his acquittal and not to the confiscated funds themselves." Following the reasoning of Interstate that the lien of the Government did not attach to the fund in court before December 1, 1961, when the delinquent taxpayer's right to the fund became choate, it must also be true that the levy on the fund by Interstate on September 27, 1961 was fatally defective. Now it so happens that with the filing of an interpleader by The Salvatorian *560 Fathers the funds owing to the delinquent taxpayer were deposited with the Clerk of the Superior Court in Trenton where no federal lien had been filed. Realizing the requirements of federal and state law that must be met in order for the lien to be effective against a judgment creditor, a question arises as to the situs of the property of the delinquent taxpayer. Two approaches are available to answer this question.
First, there is the traditional approach that the situs of personal property and intangibles is the domicile of the owner thereof. If we use this approach, obviously there is no problem in concluding that the federal lien was properly filed and effective against the judgment creditor.
Secondly, if we say that the property acquired a situs in Trenton, it is submitted that the same conclusion is mandatory. It is already established that a lien attached to the delinquent taxpayer's right to the property, and the Government became, in a sense, co-owner of the right. When there is a transfer of property to which a lien has attached, the property passes cum onere. United States v. Bess, 357 U.S. 51, 57, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). Solomon v. Gross, 176 F. Supp. 836, 837 (D.N.J. 1959).
A very similar factual situation to the one present in the instant case is found in Board of Education of Pleasantville v. Aiken, 69 N.J. Super. 70 (Ch. Div. 1961). The facts are as follows:
A federal tax lien was filed against Aiken on March 21, 1958 with the Clerk of Atlantic County. On June 21, 1958 Aiken contracted with the board of education. Rhinehart, a material man, was assignee of Aiken. Hartford, Inc., was a surety on the contract. The job was completed and accepted on September 2, 1958. In the meantime, five judgment creditors of Aiken unconnected with the present contract sought execution against the funds held by the school board. The school board filed an interpleader, and the money was deposited with the Clerk of the Superior Court. The United States, Rhinehart and the five judgment creditors *561 all claimed priority to the funds. The court held as follows (at page 85):
"The United States must also be given priority over the various judgment creditors of Aiken who attempted to levy on these funds. There was no judgment lien on these funds until delivery of a writ of execution to the sheriff or his legally appointed assistants. N.J.S. 2A:17-10. Prior to that the United States had made the delinquent tax assessment against Aiken and filed its lien with the Clerk of Atlantic County; therefore, the claim of the United States being prior in time, is entitled to priority over the claim of these judgment creditors."
It is to be noted that the decision is silent as to whether or not the funds deposited with the Clerk of the Superior Court acquired a separate situs.
In re Levitt, 7 Misc.2d 628, 169 N.Y.S.2d 407 (1957), a decision of the Albany County Court, is also enlightening. The Government filed a lien against the delinquent taxpayer with the Clerk of Montgomery County on October 24, 1955. On January 21, 1957 the delinquent taxpayer surrendered his liquor license, and on March 7, 1957 he became entitled to a license refund of money which was held by the Comptroller of the State of New York. On February 27, 1957 a judgment was entered against the delinquent taxpayer, and on February 28, 1957 the judgment creditor sought to levy on the funds in the hands of the Comptroller. The issue was whether or not the judgment creditor is entitled to priority over the United States with respect to the funds held by the Comptroller. The court held as follows:
"The inescapable conclusion from an analysis of the foregoing statutes [previously alluded to in this opinion] is that the federal government's lien was perfected when it was filed in Montgomery County and, thereafter, was valid and binding for all purposes, regardless of when a notice of levy was served upon the Comptroller. * * * It is a well established principle that a federal tax lien attaches to each item of a taxpayer's property, even though it be stated to be a general lien against all of his property, rather than a specific item. United States v. City of New Britain, Conn., 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520. * * * It is well established *562 that such federal tax lien is not limited to property owned by the taxpayer at the time the lien arises. It attaches to after acquired property (Glass City Bank v. United States, [supra] * * *)."
An examination into the history and purpose of the federal legislation requiring the Government to file its lien where property of the delinquent taxpayer is situate is in order. Prior to the passage of this legislation pledgees, bona fide purchasers, mortgagees and judgment creditors were the victims of what amounted to secret Government liens. The passage of this statute (26 U.S.C.A., § 6323) was designed to remedy an obviously unfair situation. Decisions which have been handed down describe the purpose of this statute as being "to furnish constructive notice" to those previously mentioned. Continental Investments v. United States, 142 F. Supp. 542 (W.D. Tenn. 1953); Pipola v. Chicco, 169 F. Supp. 229 (S.D.N.Y. 1959).
It must be remembered that the Government's lien attaches to all of the property and rights to property of the delinquent taxpayer, wherever located, and the additional protection given by the above statute is to prevent unfair situations caused by secret liens. United States v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705 (1893).
The problems presented by the statutory requirements of filing the tax lien when personal property is involved receives exhaustive treatment in the case of Grand Prairie State Bank v. United States, 206 F.2d 217, 219 (5 Cir. 1953), where the court stated as follows:
"It is argued that because of the transitory nature of the property in question [rings] and of personal property in general, the notices of tax liens recorded in Tarrant County are ineffective to give constructive notice to a mortgagee or pledgee that acquired its claim against the property after it was removed from that county. Appellant recognizes the general principle that the situs of personal property is regarded as being the same as the domicile of its owner, but urges that when the property was reduced to its possession in Dallas County it acquired a situs in that county and the failure of the United States to have its liens recorded there defeats its claim. The statute, however, does not require a tax lien to be filed in every county to which personal property may be carried in order to be *563 enforceable against a subsequent mortgagee or pledgee. The requirement that notice of lien be filed in the office in which the filing of such notice is authorized by the law of the state in which the property subject to the lien is situated is satisfied, so far as is pertinent here, when such notice is filed in the county of the taxpayer's domicile. [Citing cases.] It is the transitory nature of personal property which requires the application of this rule. To hold otherwise, would be to overlook the practical necessities of the situation and would require the Collector to file tax liens in every jurisdiction to which the taxpayers may at any time remove the property. We do not think this result was intended by the statute, nor do the laws of Texas relating to the recording of liens against personal property require a different result."
Judge Madden adopts this very philosophy in Solomon v. Gross, supra. In Solomon, the Government filed a tax lien in Camden County against the delinquent taxpayer, a resident of Camden County. Three days after the lien was filed, taxpayer sold trailers which he owned to a bona fide purchaser in the City of Philadelphia. The court ruled that the United States Government was entitled to the proceeds of this sale to the extent of its lien. The court reasoned as follows:
"There can be no doubt but that the seven Fruehauf trailers are personal property. They are extremely mobile and can pass from county to county or state to state in a relatively short period of time. The generally accepted principle of law regarding the situs of personal property is that the situs of personal property is determined to be that of the domicile of the owner. For the application of this principle in other Federal tax lien cases see: Investment & Securities Co. v. United States, [supra]; Grand Prairie State Bank v. United States [supra]; Marteney v. United States, 10 Cir. 1957, 245 F.2d 135; United States v. Spreckels, D.C. Cal. 1943, 50 F. Supp. 789, and United States v. Royce Shoe Company, D.C.N.H. 1956, 137 F. Supp. 786. The domicile of the taxpayers was Camden County, New Jersey, hence, applying the above stated principle it may be said that the trailers in question were situated in Camden County, New Jersey.
Therefore, considering the facts of the case at bar, the Court feels that the situs of the property in question is Camden County, New Jersey, where the taxpayers were domiciled and where the physical location of the property is established with a greater degree of permanency. Thus, the Federal tax liens were properly filed and perfected in accordance with the Federal and New Jersey statutes and the Government has valid liens as against the petitioner who is charged with constructive notice thereof. To hold otherwise, as stated *564 in Grand Prairie State Bank v. United States, supra, would be to require the Government to file notices of tax liens in every county of the state or in every state of the nation to which property of such a movable nature could be moved or temporarily located in order to protect its interest. This, in the Court's opinion, is beyond the contemplation of Section 6323 (a) (1) of Title 26 of the United States Code.
The Court is mindful of the possibility of the removal of personal property encumbered by Federal tax liens and sale of the same by designing taxpayers to innocent purchasers of another state in order to avoid the Government's liens. The Court also recognizes the injury suffered by the innocent purchaser in this case and takes refuge in the axiom, `Caveat emptor, qui ignorare non debuit quod jus alienum emit (Let a purchaser beware, who ought not to be ignorant that he is purchasing the right of another),' for the petitioner should have searched the records of the county of the taxpayers' domicile since the certificates of title themselves indicated the residence of the taxpayers to be Camden County, New Jersey. This would have been a much simpler task to require a purchaser than to require the Government to file notices in each state to which the property in question may have been removed."
It is therefore the conclusion of this court that the Federal Government is entitled to priority to the fund deposited in Trenton with the Clerk of the Superior Court, to the extent of its lien filed April 20, 1961. This conclusion is reached on the basis that the Government's lien is prior in time to that of the judgment creditor, Interstate, and attaches to choses in action as well as after acquired property of the delinquent taxpayer. The contention of Interstate that the Government's lien is defective because it was not filed in Trenton is without merit in this case. The avowed purpose of the statute requiring the filing of the lien where property of the taxpayer is situate, namely, of providing notice to a subsequent judgment creditor, has been served. Surely the first place a judgment creditor would look to discover liens already existing against his debtor would be the debtor's domicile or place of business, which in this case was Camden County where the Federal Government's lien was perfected. To hold otherwise would place an insurmountable burden upon the Federal Government in the already arduous task of collecting taxes.
*565 As to Interstate's argument that the Federal Government cannot arbitrarily apply payments to satisfy tax liens, it is likewise without merit. The right of a creditor to apply funds to debts of the debtor as he sees fit in the absence of specific instructions is elementary. It has been held that without instructions by the delinquent taxpayer, the Director of Internal Revenue is entitled to credit payments as he sees fit. F.P. Baugh, Inc. v. Little Lake Lumber Co., 185 F. Supp. 628 (N.D. Cal. S.D. 1960), affirmed in part, reversed in part on other grounds, 297 F.2d 692 (9 Cir. 1961) cert. denied 370 U.S. 909, 82 S.Ct. 1256, 8 L.Ed.2d 404 (1962).
An order should be submitted in accordance with this opinion.