### In re Delmer Lee FROST, Sr. a/k/a Delmer L. Frost, Edith Pearl Frost d/b/a Frost Trash Hauling, Debtors.

### Bankruptcy No. 81–40570.

United States Bankruptcy Court, D. Kansas.

April 20, 1982.

Karen Humphreys, Asst. U. S. Atty., Topeka, Kan., for IRS.

Larry E. Schneider, Topeka, Kan., for debtors.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

In this chapter 13 proceeding a number of questions are raised by the debtors concerning the claim of the Internal Revenue Service (IRS). The IRS filed a claim in the total amount of $77,279.14. The debtors, though not objecting to the amount of the claim, object to the classifications sought by IRS.

The IRS is represented by Karen Humphreys, Assistant United States Attorney, Topeka, Kansas. The debtors are represented by Larry C. Schneider, Topeka, Kansas.

The issues presented for initial determination are:

1. What portion of the claim is to be an allowed secured claim.

2. What portion of the claim is to be accorded priority.

3. What portion of the claim is to be accorded general unsecured status.

4. Do IRS's chapter 13 pre-filing liens attach to property acquired by the debtors' post filing.

5. Can the debtors' plan direct the order in which the IRS liens will be paid.

6. Is IRS entitled to post petition interest on its claims.

7. Do tax liens survive a successfully completed plan.

Issues reserved for determination subsequent to presentation of evidence and inclusion of an additional necessary party are:

1. Is there realizable value to the debtors' trash hauling business for good will.

2. What is the going concern value of the debtors' business.

3. What are the lien priorities between IRS and other secured creditors.

Subsequent to formal and informal pretrial conferences the parties submitted memoranda on the issues to be initially determined. Those issues are now ripe for resolution.

## FINDINGS OF FACT

The debtors, d/b/a Frost Trash Hauling, filed a chapter 13 petition and plan on July 21, 1981. The IRS was a named creditor in the debtors' schedules.

From 1974 to 1981 the Internal Revenue Service (IRS) made tax assessments against the debtors for income tax, social security and unemployment taxes. The taxes, amount due, assessment date, penalty and interest accrued to the petition date, date of tax lien notice and place of filing are as set out in the Appendix hereto.

The first four taxes listed were due more than three years before the chapter 13 petition was filed and also were assessed more than 240 days before the petition date.

The IRS admits the penalties are for non-pecuniary loss.

The IRS has filed a proof of claim in the amount of $77,320.07. The IRS asserts $54,987.53 is a secured claim based on its above listed filed tax liens and asserts $22,332.54 is an unsecured priority claim based on the following taxes:

| Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|
| Income | 12–31–80 | 8–24–81 | $11,748.90 | $451.93 |
| WT–FICA | 3–31–81 | 7–13–81 | 4,774.78 | 162.97 |
| WT–FICA | 6–30–81 | 7–29–81 | 4,834.20 | 16.69 |
| FUTA | 12–31–80 | 7–13–81 | 332.72 | 20.35 |

On October 19, 1981 the debtors objected to the IRS' claim.

On December 23, 1981 the IRS filed a supplemental claim asserting $1,444.49 as a priority claim. The IRS has at various times stated the total amount of its claim differently. The Court has added all the IRS claims on file and finds the IRS' total claim as filed breaks down as follows:

$53,391.01 is asserted as a secured claim based on tax liens

$23,888.13 is asserted as an unsecured priority claim

The IRS' total claim is $77,279.14.

The debtors' chapter 13 schedules state the total value of their property on July 31, 1981 was $36,414.32. The file reveals there are three other creditors with claims bearing on the IRS claim. Postal Finance Company has a security interest in household goods valued at $2,200. The Shawnee County Treasurer has a tax lien on the debtors' residence of $1,066.76. Refuse Equipment Company asserts a security interest in trash containers valued at $1,080.31. The parties agree that Postal Finance and the Shawnee County Treasurer possess liens superior to that of IRS.

The debtors admit their current chapter 13 plan must be modified, at the very least to include the IRS as a secured creditor. They have stated they will modify the plan after the issues in this dispute are resolved.

The debtors have expressed an intent to direct the order in which IRS liens should be satisfied in the modified plan. The debtors intend to pay the most recent liens entitled to security first until the value of the security is exhausted.

The IRS has expressed an intent to collect post petition interest not paid through the plan from the debtors after the debtors are discharged.

## CONCLUSIONS OF LAW

I. Amount of IRS' secured claim.

The debtors' chapter 13 petition and schedules state the total value of the debtors' property on the petition date was $36,414.32. The IRS filed 13 tax liens against the debtors' property before this bankruptcy proceeding was commenced, and thus makes a claim as a secured creditor. The tax liens far exceed the total value of the debtors' tangible property. Postal Finance Company has a security interest in the debtors' household goods valued by the debtor at $2,200. The Shawnee County Treasurer has a tax lien on the debtors' residence of $1,066.70. The IRS admits that these liens are superior to the IRS tax liens. Refuse Equipment Company has a security interest in trash containers valued by the debtors at $1,080.31. The IRS disputes Refuse's perfection and claims priority over Refuse's lien. This issue will be decided at a later date.

■ The IRS filed a $77,279.14 proof of claim and asserts a secured claim of $53,-391.01. Under § 506(a), however, the IRS' secured claim is allowed only to the extent of the value of the collateral securing the claim. In this case, the debtors' tangible property is worth $36,414.32 and IRS admits two liens totalling $3,266.76 have priority. Thus the IRS' secured claim may be no more than $33,147.56 (IRS' secured claim may be only $32,067.25 if Refuse Company's claim is prior).

■ IRS argues that the debtors' trash hauling business includes two intangible assets: "good will" and "going concern value." The Court will allow the IRS to present evidence at a hearing to show the value of these "intangible assets." If these "assets" are shown to have a value, IRS' secured claim will increase, but until that hearing is held, the Court will address the remaining issues based on the value of the scheduled tangible property only.

## II. Attachment of Tax Lien to After-Acquired Property.

■ Absent bankruptcy, a federal tax lien reaches all property of the taxpayer, including property acquired after the tax assessment. 26 U.S.C. §§ 6321–6322; *Glass City Bank v. U. S.*, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945); *Rice Investment Co. v. U. S.*, 625 F.2d 565 (5th Cir. 1980). In bankruptcy, property acquired by the debtors after filing their chapter 13 petition *is not subject to any lien resulting from any security agreement*.... 11 U.S.C. § 552(a) (emphasis added). A security agreement is a consensual lien *created by an agreement*, 11 U.S.C. § 101(37), and thus a tax lien is not cut off under § 552(a). Under § 506(a), however, the secured status of a creditor is determined as of the date the bankruptcy petition is filed. To the extent a claim is objected to, and *is not an allowed secured claim, such lien is void* .... 11 U.S.C. § 506(d). Thus § 506(a) and (d) assist the debtors in determining:

> at an early date the amount of the secured claims so that the nature and extent of that secured claim for planning purposes may be ascertained.

W. Drake & A. Mullins, Bankruptcy Practice § 7.05, at 7–9 (1980).

■ In this case, the debtors objected to the IRS' claim. To the extent the IRS is undersecured its liens are voided under § 506(d). See *In Re Tanner*, 14 B.R. 933, 8 B.C.D. 347, 5 C.B.C.2d 503 (W.D.Pa.1981). The voided liens cannot attach to property acquired after the chapter 13 petition is filed.

■ The practical effect of § 506(d) in a chapter 13 proceeding is relatively simple. The IRS is required to receive the value of its full secured claim under the chapter 13 plan. 11 U.S.C. § 1325(a)(5). The property to which the liens attach is only the property existing at the time the bankruptcy petition is filed. 11 U.S.C. § 506(a). This property is valued as of the effective date of the chapter 13 plan. 11 U.S.C. § 1325(a)(4). To the extent the IRS is undersecured, the liens are voided. 11 U.S.C. § 506(d).

■ Though a portion of the IRS claim may be unsecured, the IRS is also required to receive its full nondischargeable, unsecured priority claim. 11 U.S.C. § 1322(a)(2). If any portion of the IRS' claim remains that is not secured and is not a nondischargeable, unsecured priority claim, it is treated like all other unsecured claims under the debtors' plan and subject to discharge like all other unsecured debts.

## III. Allocation of Plan Payments to Tax Liens.

The debtors seek to direct that plan payments be credited to satisfy particular tax liens.

■ If voluntary tax payments are made, in the absence of an agreement, request or direction, the IRS can apply payments received to any lien or amount owed. See, e.g., *Datlof v. United States*, 370 F.2d 655 (3rd Cir. 1966), cert. denied 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967). But when the taxpayer directs to which liens or amounts owed payments should apply, the directives must be followed by the IRS. *Kurio v. U. S.*, 429 F.Supp. 42, 67 (S.D.Tex., 1970); *Baugh v. Little Lake Lumber Co.*, 185 F.Supp. 628 (N.D.Calif.,

1960), rev'd on other grounds, 297 F.2d 692 (9th Cir. 1961), cert. denied 370 U.S. 909, 82 S.Ct. 1256, 8 L.Ed.2d 404 (1962); *Spade v. Salvatorian Fathers*, 78 N.J.Super. 554, 189 A.2d 738, 744 (1963); 47 C.J.S. Internal Revenue § 779 at 318, n. 94.5 (Supp.1981).

■ Payments in a chapter 13 plan are voluntarily made because a chapter 13 petition can only be voluntarily filed by the debtor, 11 U.S.C. § 1321, and can be dismissed at any time without notice to creditors. 11 U.S.C. § 1307(b). Within the guidelines of § 1322 and § 1325, a chapter 13 debtor directs to all creditors which liens on what property are to be satisfied. In this case, the debtors intend to direct that plan payments will satisfy the IRS liens in reverse chronological order. Thus the debtors seek to first satisfy the most recent liens. In fact, this is exactly what the IRS sought to do in *Baugh v. Little Lake Lumber Co.*, 185 F.Supp. 628 (N.D.Calif.1960) in an attempt to maintain priority over a creditor intervening between the IRS' first lien and second lien. Now, however, the IRS seeks to have the debtors first satisfy the oldest liens under a "first in time" rule.

■ The rule, however, is crystal clear and uncontroverted. The taxpayer has the power to direct where payments should apply. In *Baugh*, the taxpayer forced the IRS to satisfy the oldest lien, thus protecting the priority status of the intervening creditor. In the instant case, the debtors plan to direct IRS to satisfy the most recent liens. The Court holds the debtors may make such a directive, and the IRS must abide by the debtors' directive.

■ The result in the instant case is that when the value of the collateral secured by the tax liens is paid to the IRS, only its older debts will remain. These debts will constitute an unsecured claim. The unsecured claim is a nondischargeable priority claim if the taxes either were due within three years before the bankruptcy petition date, § 507(a)(6)(A)(i), *or* were assessed within 240 days of the petition date. § 507(a)(6)(A)(ii); Cong.Rec. p. H 11112 (Sept. 28, 1978) (Rep. Edwards); Brody, Practice Under the Bankruptcy Act, 174 (1979). The priority claim includes the interest on the taxes, S.Rep.No.95–989, 95th Cong., 2nd Sess. 73 (1978), U.S.Code Cong. & Admin.News, p. 5787; § 502(b)(2); *In Re Coleman American Moving Services, Inc.*, Case No. 80–40157 (D.Kan. Oct. 23, 1981) at 4; and includes penalties for actual pecuniary loss, § 507(a)(6)(G). The IRS admits on page 7 of its first brief that the instant penalties are non-pecuniary and there is no assertion the penalties were assessed under 26 U.S.C. § 6672, and thus any penalties that constitute its unsecured claim cannot be entitled to priority treatment. In addition, the debtors' first four tax liabilities cannot be priority claims because they are out of time under § 507(a)(6). These nonpriority, unsecured IRS claims must suffer the same fate as all the other unsecured claims. The non-statutory "best efforts" or "meaningful payments" tests elsewhere imposed are not the rule in this Court, and the chapter 13 debtor need only pay to unsecured creditors what the unsecured creditors would have received under chapter 7. If the unsecured creditors would receive nothing in a chapter 7 proceeding the chapter 13 debtor is not required to pay them anything regardless of the Court's moral scruples to the contrary. *In Re Garcia*, 6 B.R. 35, 6 B.C.D. 1212 (D.Kan.1980). The debtors' original plan proposed to pay 1% to unsecured claims. If that is not amended and the plan found to be confirmable, the portion of the IRS claim that is nonpriority and unsecured will be paid 1 cent on the dollar and the remainder would be discharged under 11 U.S.C. § 1328 upon completion of the plan.

IV.  Post Petition Interest.

■ Like all other creditors with secured claims, the IRS is entitled to a discount factor as provided by 11 U.S.C. § 1325(a)(5)(B)(ii). Interest may only be paid on secured claims, including those of IRS, when the value of the collateral securing the lien exceeds the amount owed. *In Re Busman*, 5 B.R. 332, 338, 6 B.C.D. 683, 686 (E.D.N.Y.1980); § 506(b). At present it appears the IRS is undersecured and therefore only entitled to collect pursuant to § 1325(a)(5)(B)(ii).

Under the Court's holding in this opinion, IRS is required to receive its full secured

claim plus a discount factor, its full priority claim and any payment required of its unsecured claim through the plan. All other liability can be and will be discharged upon successful completion of the plan.

Mention was made at the pretrial by IRS and responded to in one of debtors' memoranda that IRS may compute post petition interest and attempt after discharge to collect it from the debtors. Congress has allowed the IRS to have nondischargeable priority claims subject to temporal limitations. To the extent the IRS has a dischargeable unsecured claim, it is no different than any other creditor. The notion that any creditor can show up at the debtors' doorstep after discharge is granted and attempt to collect a discharged debt is inequitable, is offensive to the concept of the debtor's fresh start after discharge, and above all is in violation of the provisions of 11 U.S.C. § 524(a). Therefore, the Court holds the IRS cannot collect this post-petition interest from the debtors after receipt of a discharge.

Based on the Court's holdings and after the hearing to value the debtors' intangible assets, if any, and the hearing to determine the priorities between the IRS 'and a secured creditor, the amount of the IRS' secured claim, unsecured priority claim, and unsecured non-priority claim, if any, will be determined. The parties will then be able to determine how much the IRS must be paid under the plan, and how much of the IRS' claim can or may be discharged.

The Court will enter the Order on the debtors' objection to the amount of the IRS' secured claim and priority claim after the evidentiary hearings are held.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 752 and Rule 52(a) of the Federal Rules of Civil Procedure.