In the Matter of Andrew L. DRISCOLL, Sr., a/k/a Andrew Lewis Driscoll, Sr. Andy Driscoll, Sr., Debtor.

Bankruptcy No. MM13–83–02088.

United States Bankruptcy Court,
W.D. Wisconsin.

Jan. 31, 1986.

Jerome M. Ott, Lawton & Cates, Madison, Wis., for debtor.

Mary E. Bielefeld, Trial Atty., Tax Div. Washington, D.C., for IRS.

William A. Chatterton, Ross & Chatterton, Madison, Wis., for trustee.

## OPINION

ROBERT D. MARTIN, Bankruptcy Judge.

On December 23, 1983, Andrew Driscoll ("debtor") filed his petition for relief under chapter 13 of the Bankruptcy Code. On April 2, 1984, the IRS filed its claim for the following amounts:

| | |
|---|---|
| secured tax claim | $15,156.09[1] |
| unsecured priority tax claim | 970.38 |
| unsecured tax claim | 140.82 |

The debtor's chapter 13 plan provides for monthly payments of $21.00 per month for thirty-six months for a total pay out under the plan of $756.00. On April 9, 1984, the debtor's plan was provisionally confirmed from the bench. A ruling on the status of tax claims was reserved until later. An order of confirmation was thereafter entered in the normal form.

In his motion to change the classification of the IRS claims the debtor alleges that he

---

1. The IRS admits that its total secured claim is limited by the value of the collateral retained by the debtor which it alleges to be $11,396.72. The debtor in this matter has admitted that the IRS's tax liens were properly filed and thus perfected for purposes of the Bankruptcy Code, but claims that the amount of the secured claim is limited to $10,396.72 because the debtor turned over to the trustee $1,000.00 of the claimed exempt assets.

had made all payments proposed under the plan "including the prepayment without discount of the monthly payments that were to be made through December 1986." The debtor argues that having made all payments required under his plan he is now entitled to reclassification of the IRS's secured claim and as a consequence the discharge of that claim. In his motion the debtor essentially seeks two things. First, he seeks to reclassify the IRS's secured claim as unsecured and in effect to avoid the tax liens which attach to his exempt assets.[2] Second, the debtor seeks a determination that the IRS has waived any objection to his claimed exemptions and to the discharge of its tax claim. A number of arguments, detailed below, are advanced by the debtor in support of his objectives; none have merit.

## I.

■ The debtor's first argument is that the IRS's secured claim should be reclassified as unsecured because the chapter 13 estate contained no assets to which the IRS's tax lien could attach. This erroneous theory is premised on the notion that since the IRS's claim was undersecured it should be treated as totally unsecured. *In Re Frost,* 19 B.R. 804 (Bankr.D.Kan.1982), *reversed on other grounds,* 47 B.R. 961 (D.Kan.1985), is cited in support of this proposition. However, *Frost* merely holds that a claim is unsecured to the extent that the claim exceeds the value of the collateral securing it. Thus, *Frost* provides absolutely no support for the debtor's contention.

The debtor next argues that he may avoid the IRS's tax lien under 11 U.S.C. § 545(2).[3] Section 545(2) allows the trustee to avoid the fixing of a statutory lien on property of the debtor under certain specified circumstances. The IRS lien in question is a statutory lien within the meaning of section 545 and thus may be avoided by the trustee under section 545(2). The debtor argues that 11 U.S.C. § 1303 grants him the right to utilize all of the trustee's avoiding powers, including those contained in section 545. However, section 1303 grants a chapter 13 debtor the powers of a trustee only under specified subsections of 11 U.S.C. § 363 and does not purport to grant the debtor any of the trustee's avoiding powers found in chapter 5 of the Code. The debtor cites *In Re Boyette,* 33 B.R. 10 (Bankr.N.D.Tex.1983), and in *In Re Hall,* 26 B.R. 10 (Bankr.M.D.Fla.1982) for the proposition that the debtor has standing to invoke the trustee's avoiding powers despite the lack of any provision of the Code to that effect. *Hall* and *Boyette* rely on the legislative history to section 1303 which provides in relevant part:

> Section 1303 of the House Amendment specifies rights and powers that the debtor has exclusive of the trustees. *The section does not imply that the debtor does not also possess other powers concurrently with the trustee.* For example, although section 1323 is not specified in section 1303, certainly it is intended that the debtor has the power to sue and

**2.** In the debtor's bankruptcy schedules he claimed exemptions of the following assets:

| description | present market value | amount of security interest | value claimed exempt |
|---|---|---|---|
| 1983 Dodge Aries | $7,000.00 | $1,900.00 | $5,100.00 |
| household goods | 1,785.00 | | 1,785.00 |
| cash | 4,511.72* | | 3,511.72 |

* This amount includes an additional amount of $2,721.83 which represents past due social security payments which the debtor included in his exemptions by virtue of an amendment to his schedule B–4 which was filed on April 9, 1984. However, of this $2,721.83 the debtor agreed to pay the trustee the sum of $1,000.00 which was to be disbursed first to priority claims, second to dividends to secured creditors holding allowed secured claims, and third to dividends to unsecured creditors.

**3.** 11 U.S.C. § 545(2) provides:
> The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
>  . . . .
> (2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists.

be sued. 124 Cong.Rec.H. 11,106 (Sept. 28, 1978); S. 17,423 (Oct. 6, 1978).

*In Re Hall*, 26 B.R. at 11 (quoting legislative history, emphasis in text).

■ The better view is expressed by *In Re Carter*, 2 B.R. 321 (Bankr.D.Colo.1980). That opinion held that chapter 13 debtors may not generally utilize the trustee's chapter 5 avoiding powers. The court specifically rejected the argument that the legislative history of section 1303 requires a contrary result:

> The Debtors assert, however, that they are armed with the powers of the Chapter 13 Trustee by operation of law. No Code section supports that view. Various powers of the trustee pursuant to 11 U.S.C. § 363 are granted to the debtor exclusive of the trustee pursuant to 11 U.S.C. § 1303. In addition, 11 U.S.C. § 1304 adds various other powers for a Chapter 13 debtor engaged in business. None of the powers accorded the trustee in Chapter 5 are given to the debtor by these Sections. The legislative history of § 1303 indicates that some powers may be concurrently held by the trustee and the debtor. S.Rep. No. 95–989, 95th Cong., 2nd Sess. 140 (1978), U.S.Code Cong. & Admin.News, p. 5787. That legislative history does not authorize concurrent debtor access to the lien avoidance powers specifically granted to the trustee in Chapter 5 of the Code. The congressional example of a concurrently held power is the right to sue and be sued. Obviously, the recognition of that power does no violence to the role of the Chapter 13 trustee. Were lien avoidance powers concurrently held, the trustee would effectively lose control over lien avoidance litigation. That result should be avoided, particularly if it is reachable only by implication. When Congress intended debtors to exercise the powers of a trustee in Chapter 11, it explicitly so stated in § 1107(a). Presumably, a section analogous to § 1107(a) would be present in Chapter 13 if that were the congressional intent. The Court con-

cludes that a Chapter 13 debtor has no 'strong-arm' power under the Code.

*Id.* at 322.

The limited power of a chapter 13 debtor to utilize the trustee's chapter 5 avoiding powers is governed by section 522 of the Code. 11 U.S.C. § 522(h) provides:

> (h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—
>
> (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title: and
>
> (2) the trustee does not attempt to avoid such transfer.

11 U.S.C. § 522(g) further provides:

> (g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
>
> (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
>
> (B) the debtor did not conceal such property; or
>
> (2) the debtor could have avoided such transfer under subsection (f)(2) of this section.

■ Section 522(h) allows the debtor to utilize the trustee's avoiding powers only when the debtor could have exempted the property under section 522(g)(1). Section 522(g)(1) permits the debtor to exempt under section 522(b) property that the trustee recovers under specified sections of the Code. Section 522(b) of the Code allows the debtor to exempt a broad range of property under either federal or state exemption provisions. *See* 11 U.S.C. §§ 522(b) and (d). Section 522(f) specifically delineates the power of the debtor to avoid the fixing of liens on any property

claimed as exempt under section 522(b).[4] Conspicuously absent from section 522(f) is any provision allowing the debtor to avoid statutory liens. There is no question that the tax lien which is the subject of this dispute is a statutory lien which may not be avoided under section 522(f). *See In Re Mills,* 37 B.R. 832 (Bankr.E.D.Tenn.1984):

> Legislative history indicates a clear congressional intent to include tax liens within the definition of a statutory lien. The House Committee on the Judiciary observed:

> A statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or on judicial action ... Tax liens are also included in the definition of statutory lien. H.R. Rep. No. 95–595, 95th Cong. 1st Sess. 314, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6271.

*Id.* at 834–835. *See also In Re Zerger,* 35 B.R. 42, 43 (Bankr.D.Ore.1983); *In Re Davis,* 22 B.R. 523, 524 (Bankr.W.D.Pa.1981).

4. 11 U.S.C. § 522(f) provides:
> (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
> (1) a judicial lien; or
> (2) a nonpossessory, nonpurchase-money security interest in any—
> (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
> (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
> (C) professionally prescribed health aids for the debtor or a dependent of the debtor.

5. The debtor suggests however that the provisions of former section 522(c)(2)(C) apply to this case, apparently because the case was filed in 1983, prior to the enactment of the 1984 amendments to title 11. Prior to July 10, 1984, section 522(c) read in relevant part:
> (c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor

Further, section 522(b) and (g)(1) must be read in conjunction with section 522(c) which provides in relevant part:

> (c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—
> (1) a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title; or
> (2) a debt secured by a lien that is—
> (A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and
> (ii) not void under section 506(d) of this title; or
> (B) a tax lien, notice of which is properly filed.

11 U.S.C. § 522(c). Thus it is clear that Congress did not intend to grant chapter 13 debtors the trustee's power to avoid tax liens.[5]

that arose ... before the commencement of the case, except—
> . . . .
> (2) a lien that is—
> . . . .
> (C)(i) a tax lien, notice of which is properly filed; and
> (ii) *avoided under section 545(2) of this title.*

(emphasis added). On the basis of *In Re Kuehndorf,* 24 B.R. 555 (W.D.Wis.1982) it is doubtful that the prior version of section 522(c) applies to this motion since the motion was filed well after the enactment date of the new section. Although *Kuehndorf* may stand overruled by implication, *see In Re Brandstaetter,* 13 B.C.D. 599, 767 F.2d 324 (7th Cir.1985), the result would not change even if the prior law were applied. Subparagraph (ii) was removed from paragraph (C) (which became paragraph (B) in the current version) for the obvious reason that the former wording was poorly drafted and improperly expressed the Congressional intent. The suggestion that under the prior law only properly filed tax liens which had been avoided under section 545(2) would remain liens against the debtor's property is extremely far fetched. Such a reading would lead to the bizarre result that a tax lien which was not avoidable under section 545(2) would be destroyed in bankruptcy while a tax lien that was avoidable under section 545(2) could remain effective against property of the debtor. The court is not obligated to so follow the literal language of a statute as to destroy the clear, albeit poorly expressed,

## II.

■ The debtor argues that because the IRS failed to object to the debtor's claimed exemptions and failed to file a timely complaint to determine the dischargeability of the claimed secured debt that the debt is discharged and the liens are unenforceable. A lien in favor of the IRS for unpaid taxes, interest and penalties arises on demand upon all real and personal property of the taxpayer. 26 U.S.C. § 6321. The lien is perfected by filing notice pursuant to 26 U.S.C. § 6323(a) and (f). The lien remains in effect until the taxes are paid or until the expiration of the statute of limitations for collections. 26 U.S.C. § 6322. In bankruptcy, however, the extent of the IRS's secured claim is measured by the value of the collateral as of the date of the filing of the bankruptcy petition. 11 U.S.C. § 506(a); *In Re Robinson,* 39 B.R. 47, 11 B.C.D. 1292 (Bankr.E.D.Va.1984). The lien securing an allowed secured claim for taxes remains valid to the extent of the allowed secured claim. *See* 11 U.S.C. § 506(d); 522(c). The fact that the IRS failed to object to the debtor's claimed exemptions is of no consequence since the exempt property in question remains subject to the tax lien under the Code,[6] and no section of the Code requires an objection under these circumstances. The fact that the IRS failed to object to dischargeability of the secured tax claims is also irrelevant since only debts of the type listed in section 523(a)(2), (4), and (6) are discharged if the creditor fails to file a complaint to determine dischargeability. The IRS claims at issue here are nondischargeable solely by virtue of section 523(a)(1), (7).

## III.

■ The procedural history of this case reveals clearly that confirmation of the debtor's plan was only provisional and subject to a final determination at a later date concerning the status of the IRS tax claims. Sections 1322 and 1325 of the Code provide the standards for a confirmable chapter 13 plan. 11 U.S.C. § 1322(a)(2) provides:

(a) The plan shall—

. . . .

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim. . . .

11 U.S.C. § 1325(a) provides in relevant part:

---

legislative intent which is revealed therein. *See Wisconsin Higher Ed. Aids Bd. v. Lipke,* 630 F.2d 1225, 1229–30 (7th Cir.1980); *In Re Adamo,* 619 F.2d 216, 219 (2d Cir.1980).

That this construction of former section 522(c)(2)(C) is correct is reinforced by the relevant legislative history. The House and Senate Reports pertinent to section 522(c) contain similar statements with respect to tax liens:

Subsection (c) insulates exempt property from prepetition claims other than tax claims (whether or not dischargeable), and other than alimony, maintenance, or support claims that are excepted from discharge. The bankruptcy discharge does not prevent enforcement of valid liens. The rule of *Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), is accepted with respect to the enforcement of valid liens on nonexempt property as well as on exempt property. *Cf. Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 583, 55 S.Ct. 854, 860, 79 L.Ed. 1593 (1935).

S.Report No. 95–989, 95th Cong., 2d Sess. 76 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862, 3 App. Collier on Bankruptcy (15th ed. 1985).

Subsection (c) insulates exempt property from prepetition claims, except tax and alimony, maintenance, or support claims that are excepted from discharge. The bankruptcy discharge will not prevent enforcement of valid liens. The rule of *Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), is accepted with respect to the enforcement of valid liens on nonexempt property as well as on exempt property. *Cf. Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 583, 55 S.Ct. 854, 860, 79 L.Ed. 1593 (1935).

H.Report No. 95–595, 95th Cong., 1st Sess. 361 (1977), U.S.Code Cong. & Admin.News 1978, p. 6317, 2 App. Collier on Bankruptcy (15th ed. 1985). The only reasonable conclusion is that section 522(c)(2)(C)(ii) was a drafting error.

**6.** *See* 11 U.S.C. § 522(c). The debtor does receive a much smaller personal property exemption under IRC § 6334 (26 U.S.C. § 6334) which constitutes the sole exemption which may be claimed against a valid federal tax lien.

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

. . . .

(3) the plan has been proposed in good faith and not by any means forbidden by law;

. . . .

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder. . . .

The requirements set forth by the language quoted above are clear. In a chapter 13 plan all claims entitled to priority under section 507 must be paid in full unless the claimant agrees to different treatment. Similarly with respect to secured claims the chapter 13 plan must provide for full payment of the allowed secured claim and for the retention of the lien securing the claim or in the alternative that the debtor surrender the property securing the claim to the claimant. While the order confirming the debtor's chapter 13 plan does not expressly deal with the problem raised by the tax claims, the court stated on the record and noted in its proceeding memo of April 9 that the debtor's plan was confirmed without ruling on the priority of tax claims. The court further stated that tax claims were to be paid on a priority basis until there was a successful objection to the claims. Therefore, it is clear that approval of the plan was conditional.

The precise effect of the conditional approval of the debtor's chapter 13 plan must now be considered. Section 1328(a) provides:

(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of *all debts provided for by the plan* or disallowed under section 502 of this title, except any debt—

(1) provided for under section 1322(b)(5) of this title; or

(2) of the kind specified in section 523(a)(5) of this title.

11 U.S.C. § 1328(a) (emphasis added). This section requires the discharge, with two narrow exceptions, of "all debts provided for by the plan." However, section 1328 must be read in conjunction with the relevant portions of section 1322 and 1325 quoted above. Those sections make clear that a plan which does not provide for the full payment of priority and secured claims is not confirmable.[7] The court must therefore revoke confirmation of the debtor's plan in order to avoid circumvention of the clear requirements of the Code.[8]

An order may be entered based on this opinion.

---

**7.** Although the debtor has not sought a hardship discharge under section 1328(b), such a discharge would not aid the debtor since under section 1328(c) the debtor would only be discharged from unsecured debts properly provided for by the plan.

**8.** The suggestion that the court may avoid this result by invoking its equitable power under 11 U.S.C. § 105 to discharge the tax liens and claims is meritless. Section 105(a) simply grants the court the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Nothing in section 105 grants the court the power to disregard the intent of Congress as expressed in the relevant sections of the Code.