**In the Matter of John L. RILEY and Jean F. Riley, Debtor.**

**John L. RILEY and Jean F. Riley, Plaintiffs,**

v.

**STATE OF WISCONSIN DEPARTMENT OF REVENUE and USA Department of Treasury, Internal Revenue Service, Defendants.**

**Adv. P. No. 85–0223–13.**

United States Bankruptcy Court, W.D. Wisconsin.

July 15, 1987.

Jerome Ott, Lawton & Cates, Madison, Wis., for plaintiffs.

William A. Chatterton, Ross & Chatterton, Madison, Wis., chapter 13 trustee.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

On October 18, 1983, John L. and Jean F. Riley filed their chapter 13 plan which provided monthly payments of $976.00 to the trustee until the sale of their house. The monthly payments then would be reduced to $675.00 per month for the balance of thirty-six months. The Rileys were scheduled to pay out a total of $120,205.73, of which $69,895.70 would go to secured claims and $20,337.31 to priority claims.

Proceeds of the sale of the house were to be used to pay in full claims secured by mortgages.[1] Any remaining sale proceeds were to be applied to payment of taxes,

---

1. The following claims were listed as secured by mortgages on the house:

| 1. | Anchor Savings & Loan | home purchase |
|---|---|---|
| | P.O. Box 7933 | money mortgage |
| | Madison, WI 53703 | dated 12/19/69 |
| 2. | Small Business Administration | guarantee of business |
| | c/o U.S. Attorney | note by mortgage to |
| | 212 E. Washington Ave. Rm 213 | United Bank of Westgate |
| | Madison, WI 53703 | |
| | recorded 8/23/76 | claim: $33,500 plus |
| | assigned to SBA 3/11/82 | interest at 12% from 9/12/83 |
| | judgment of foreclosure 9/28/83 | |
| 3. | Marjorie Yocum | mortgage to Bank of |
| | 2001 Elka Ln | Middleton for business |
| | Madison, WI 53704 | loan dated 4/1/73 |
| | recorded 12/22/76 | claim: $3,000.00 plus |

interest, and penalties of the Internal Revenue Service ("IRS") and the Wisconsin Department of Revenue ("WDR") for the years 1980, 1981, 1982, and 1983. Proceeds from any other assets turned over to the trustee were also to be used for the payment of priority taxes. In addition, the IRS was to receive $100.00 per month and the WDR $79.07 per month toward the payment of priority taxes.

Although claims had not been finally determined, the trustee recommended confirmation of the plan. No objections to confirmation were timely filed. On December 19, 1983, an order was entered confirming the Rileys' chapter 13 plan pending the determination of claims.

On December 29, 1983, the IRS filed an unsecured claim for priority taxes in the amount of $10,480.89 (including interest and penalties) and secured claims in the amount of $62,811.14 (including interests and penalties). On February 14, 1984, the IRS filed an additional unsecured claim for priority taxes in the amount of $14,248.16 (including interest). Thereafter, WDR filed its unsecured claim of $727.40 (not including interest or penalties) for priority taxes and a secured claim of $53,712.20 (including interest and penalties). The security for all tax claims consisted of liens, primarily on the Rileys' house. On April 24, 1984, in the absence of any objections this court allowed the following claims:

| CLAIM | AMOUNT | CLASS |
|---|---|---|
| DANE COUNTY TREASURER | 2,657.37 | priority |
| DEAN CLINIC | 1,268.50 | unsecured |
| ELANCO FINANCIAL SERVICES | 774.35 | unsecured |
| INTERNAL REVENUE SERVICE | 73,292.03 | secured |
| INTERNAL REVENUE SERVICE | 14,248.16 | priority |
| SMALL BUSINESS ADMINISTRATION | 33,500.00 | secured |
| WISCONSIN DEPT. OF REVENUE | 54,439.60 | priority |
| MARJORIE YOCUM | 3,000.00 | secured |
| ELANCO FINANCIAL SERVICES | 1,315.96 | unsecured |

The Rileys' house was sold sometime in April or May of 1985 for $85,000.00. The order authorizing the sale, dated April 11, 1985, provided that the sale would be free and clear of all liens, with the liens to attach to the proceeds.

Prior to the house sale the following amounts had been paid out to various creditors in accordance to the terms of the plan:

| | |
|---|---|
| Jerome Ott (attorney for debtors) | $ 1,200.00 |
| Internal Revenue Service | 4,055.08 |
| Small Business Administration | 1,846.90 |
| Wisconsin Dept. of Revenue | 2,295.68 |
| Marjorie Yocum | 152.70 |
| Anchor Savings & Loan | 148.00 |
| Dane County Treasurer | 6,465.75 |
| Total | $16,164.11 |

After the sale the trustee distributed part of the proceeds as follows:

| | |
|---|---|
| Small Business Administration | 37,840.72 |
| Anchor Savings & Loan | 8,802.92 |
| Lawton & Cates (Jerome Ott) | 263.00 |

SBA and Anchor Savings & Loan have now been paid in full.

The remaining balance of $37,318.14 from the sale proceeds is being held by the trustee. The Rileys brought this adversary proceeding seeking a determination as to the relative rights of various claimants to the proceeds. In addition to sale proceeds and interest, the trustee is holding $11,096.24 from regular plan payments. The trustee seeks direction in the application of those funds.[2]

2. The trustee's accounting as of September 9, 1986, shows:

| | |
|---|---|
| Receipts from monthly payments | $27,711.01 |
| Receipts from sale of house | 37,318.14 |
| Net receipts | $65,029.15 |

| | |
|---|---|
| Net paid to creditors | 16,164.11 |
| House proceeds (holding in C.D.) | 37,318.14 |

| | |
|---|---|
| Paid to trustee | $ 2,535.41 |
| Funds on hand | 9,011.49 |
| | $65,029.15 |

Individual amounts paid to creditors

| | |
|---|---|
| Jerome Ott | 1,200.00 |
| Internal Revenue Service | 4,055.08 |

The Rileys demand that the sale and plan payment proceeds be applied toward the satisfaction of the priority taxes of the IRS and the WDR before being applied toward their tax liens. They maintain that they were entitled to provide in their plan for the satisfaction of priority taxes before the satisfaction of tax liens in accordance with the "general rule that a taxpayer may direct payments toward the application of a particular tax deficiency." Even if this general rule does not apply they argue that the IRS and WDR cannot object to the plan's treatment of their secured claims because once a plan has been confirmed all creditors are bound by the treatment of their claim in the confirmed plan. The Rileys cite *In re Flick*, 14 B.R. 912, 918 (Bankr.E.D.Pa.1981) where the court stated that "... the terms of the confirmed plan bind both the debtor and creditor, and controls any claims of the creditor as adjusted by the plan. The creditor is bound by the confirmed plan whether or not he has objected to the plan." They also demand that the IRS and the WDR satisfy all tax liens upon the earliest to occur of either payment in full of the lien or the completion of the plan, arguing that after the completion of the plan, all remaining tax liens will be unsecured and may be discharged.

The IRS and the WDR contend that their secured tax claims must be satisfied in full before any payments are made toward priority taxes. In response to the Rileys' argument that they are bound by the plan's treatment of their secured tax claims both taxing authorities cite *In re Simmons*, 765 F.2d 547 (5th Cir.1985) for the proposition that a confirmed plan does not invalidate tax liens.

■ As a general rule, a taxpayer may direct the application of payments to whatever type of tax liability he chooses. *Muntwyler v. United States*, 703 F.2d 1030, 1032 (7th Cir.1983), citing *O'Dell v. United States*, 326 F.2d 451, 456 (10th Cir. 1964). However, this rule applies only when a taxpayer makes voluntary pay-

ments to the IRS. *Muntwyler*, 703 F.2d at 1032. When a payment is involuntary the IRS may allocate the payments as it sees fit. *See id.* A payment is involuntary if it is made "as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor." *Id.* citing, *Amos v. Commissioner*, 47 T.C. 65, 69 (1966). The key distinction between voluntary and involuntary payment lies in "the presence of court action or administrative action resulting in an actual seizure of property or money as in a levy." 703 F.2d at 1033.

■ Tax payments made in the course of a bankruptcy proceeding are by their nature involuntary. *See First National City Bank v. Kline*, 439 F.Supp. 726, 729 (S.D. N.Y.1977). *See also In re Frost*, 47 B.R. 961, 964–65 (D.Kan.1985), *rev'g* 19 B.R. 804, 809 (Bankr.D.Kan.1982) where the court concluded that "[p]ayments in a chapter 13 plan are voluntarily made because a chapter 13 petition can only be voluntarily filed by the debtor, 11 U.S.C. § 1321, and can be dismissed at any time without notice to creditors. 11 U.S.C. § 1307(b)." Because payments made to the IRS in the course of a bankruptcy proceeding are involuntary, the Rileys were not entitled to choose which tax deficiencies they wanted to satisfy first through plan payments. Rather, they were required to allocate tax payments in a manner which would comport with the Bankruptcy Code.

■ The general rule is that a valid lien must be satisfied in full before any payment of dividends to unsecured creditors, including those entitled to priority status, or administrative expenses can be made. *In re Orchid Island Hotels, Inc.*, 18 B.R. 926, 934 (Bankr.D.Hawaii 1982), citing *U.S. v. Speers*, 382 U.S. 266, 269 n. 3, 86 S.Ct. 411, 413 n. 3, 15 L.Ed.2d 314 (1965); *Goggin v. California Labor Division*, 336 U.S. 118, 127, 69 S.Ct. 469, 474, 93 L.Ed. 543 (1949); *In re Mount Holly Paper Co.*, 110

| | |
|---|---|
| Small Business Administration | $ 1,846.90 |
| Wisconsin Dept. of Revenue | 2,295.68 |
| Marjorie Yocum | 152.70 |
| Anchor Savings & Loan | 148.00 |
| Dane County Treasurer | $ 6,465.75 |
| Total paid to creditors | $16,164.11 |

F.2d 220, 224 (3d Cir.1940); *Durand v. N.L.R.B.*, 296 F.Supp. 1049, 1057 (W.D.Ark. 1969); *In re Goldstein,* 34 F.Supp. 876, 879 (E.D.Pa.1940) (footnote omitted). *See also In re Healis,* 49 B.R. 939, 941 (Bankr.M.D. Pa.1985) where the court stated "[i]n a repayment plan, the approach is to pay the secured tax claim in full and then to provide for priority payments for the balance of the unsecured tax claims." Since the Rileys' plan does not provide for the satisfaction of valid tax liens of the IRS and WDR before distribution to priority taxes as it should, it is necessary to examine whether the confirmed plan as written will have a binding effect on the order of distribution.

■ In some circumstances confirmation of a plan does have a res judicata effect binding all creditors to the terms of the confirmed plan regardless of whether they have been provided for in the plan or have objected to, accepted, or rejected the plan. *See* 11 U.S.C. § 1327. *See also In re Zimble,* 47 B.R. 639, 640 (Bankr.D.R.I. 1985); *In re Willey,* 24 B.R. 369, 375 (E.D. Mich.1982); *In re Lewis,* 8 B.R. 132, 137 (Bankr.D.Idaho 1981). However, a confirmed plan which does not provide for the satisfaction of allowed secured claims will not be binding on the secured creditors and will not have the effect of invalidating or extinguishing their otherwise valid liens, as this court enunciated in *In re Spohn,* 61 B.R. 264, 265–66 (Bankr.W.D.Wis.1986):

> Although the unsecured creditors are bound by the terms of a confirmed plan, even if the plan erroneously treats their claim, the lien held by a secured creditor cannot be defeated by the terms of a confirmed plan. *See In re Simmons,* 765 F.2d 547 (5th Cir.1985). Unless the debtor objects to the secured claim the claim is deemed allowed for purposes of the plan. *See id.* at 553, *citing In re Hartford,* 7 B.R. 914 (Bankr.D.Me.1981). This principle appears to hold true even when the secured creditor has failed to file a proof of claim. *See Simmons, supra,* at 551. *See also In re Tarnow,* 749 F.2d 464, 465 (7th Cir.1984). Thus, unless the underlying claim has been disallowed the lien securing the claim is not

extinguished by bankruptcy. *See id.* at 466–67. *See also Long v. Bullard,* 117 U.S. 617, 620–21, 6 S.Ct. 917, 918, 29 L.Ed. 1004 (1886). It follows that the debtor's chapter 13 plan must provide for the full amount of the bank's lien or for surrender of all the collateral. *See* 11 U.S.C. § 1325(a)(5).

■ The IRS and WDR filed their proofs of claims within the time period required by Bankruptcy Rule 3002(c). A proof of claim duly filed is accorded prima facie validity. *Id.* at 265. Unless the debtor objects and tenders sufficient evidence to overcome the prima facie validity accorded to the claim, the claim is allowed. *Id.* Since the Rileys did not object to either the IRS or the WDR's claims, the claims have been allowed pursuant to 11 U.S.C. § 502(a) and hence may not be extinguished by the terms of the Riley's plan. The only valid manner in which the tax liens may be extinguished is through one of the lien avoidance provisions of the Bankruptcy Code.

■ 11 U.S.C. § 545(2) provides:

The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

(2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists.

A tax lien is a statutory lien within the meaning of section 545. *In re Driscoll,* 57 B.R. 322, 326 (Bankr.W.D.Wis.1986). However, statutory liens for which notice has been properly filed, as in this case, may not be avoided under section 545(2) because such liens are enforceable against bona fide purchasers on the date of the filing of the petition. Consequently, the trustee could not utilize section 545(2) in this case to avoid the tax liens of the IRS or WDR.

■ Section 506(d) provides:

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

The method for determining whether an allowed claim is secured is set out in section 506(a) which provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Under section 506(a) a creditor's secured claim is allowed only to the extent of the value of collateral securing the claim. Secured status is determined as of the date of the filing of the bankruptcy petition. *In re Driscoll*, 57 B.R. at 327. To the extent the IRS or WDR were undercollateralized on the date of bankruptcy their liens may be voided under section 506(d). *In re Frost*, 19 B.R. 804, 808 (Bankr.D.Kan.1982), *rev'd on other grounds* 47 B.R. 961 (D.Kan. 1985). Voided liens cannot attach to property acquired after the chapter 13 petition is filed. *Id.* To determine the extent to which the IRS and WDR are secured, it is necessary to ascertain to which property their liens attached.

The IRS maintains that unless a tax lien has been avoided under 11 U.S.C. § 545 or § 506(d), it will attach to all property of the debtor's, including exempt property and property acquired after discharge. The

WDR also maintains that its tax liens attach to exempt property. The WDR, however, states that its tax liens have attached only to the Rileys' real property. The Rileys argue that because the IRS and WDR did not object to their claimed exemptions within the time prescribed by Bankruptcy Rule 4003(b) the tax liens will not attach to their exempt property. They also argue that the tax liens cannot attach to personal property they acquire after the filing and confirmation of their chapter 13 plan since the after-acquired property would not be property of the estate and the automatic stay would prevent the liens from attaching.

 A federal tax lien attaches to all of the taxpayer's real and personal property upon assessment and demand. 26 U.S.C. §§ 6321 and 6322. The lien remains in effect until the taxes are paid or until the statute of limitations for collections runs. 26 U.S.C. § 6322. The statute of limitations for tax collections is six years, however, it is tolled upon the taxpayer's filing for bankruptcy. *See* 26 U.S.C. § 6503(b). The property to which the tax lien attaches includes property the debtor has exempted under state law or under the federal exemptions created in the Bankruptcy Code. *In re Driscoll*, 57 B.R. at 327. The debtor in *Driscoll* argued that because the IRS failed to object to the debtor's claimed exemptions, the IRS' tax liens were not enforceable against the exempted property. *Id.* This court rejected that argument when it stated:

The fact that the IRS failed to object to the debtor's claimed exemptions is of no consequence since the exempt property in question remains subject to the tax lien under the Code,[6] and no section of the Code requires an objection under these circumstances.

*Id.* In footnote six this court pointed out that the only exemptions which a debtor may claim against a federal tax lien are those listed in 26 U.S.C. § 6334.[3] *Id.* at n. 6.

**3.** Section 6334 provides:

§ 6334. Property exempt from levy

(a) Enumeration.—There shall be exempt from levy—

(1) Wearing apparel and school books.—Such items of wearing apparel and such school books as are necessary for the taxpayer or for members of his family;

(2) Fuel, provisions, furniture, and personal effects.—If the taxpayer is the head of a family, so much of the fuel, provisions, furniture, and personal effects in his household, and of the arms for personal use, livestock, and poultry of the taxpayer, as does not exceed $1,500 in value;

(3) Books and tools of a trade, business, or profession.—So many of the books and tools necessary for the trade, business, or profession of the taxpayer as do not exceed in the aggregate $1,000 in value;

(4) Unemployment benefits.—Any amount payable to an individual with respect to his unemployment (including any portion thereof payable with respect to dependents) under an unemployment compensation law of the United States, of any State, or of the District of Columbia or of the Commonwealth of Puerto Rico.

(5) Undelivered mail.—Mail, addressed to any person, which has not been delivered to the addressee.

(6) Certain annuity and pension payments.—Annuity or pension payments under the Railroad Retirement Act, benefits under the Railroad Unemployment Insurance Act, special pension payments received by a person whose name has been entered on the Army, Navy, Air Force, and Coast Guard Medal of Honor roll (38 U.S.C. 562), and annuities based on retired or retainer pay under chapter 73 of title 10 of the United States Code.

(7) Workmen's compensation.—Any amount payable to an individual as workmen's compensation (including any portion thereof payable with respect to dependents) under a workmen's compensation law of the United States, any State, the District of Columbia, or the Commonwealth of Puerto Rico.

(8) Judgments for support of minor children.—If the taxpayer is required by judgment of a court of competent jurisdiction, entered prior to the date of levy, to contribute to the support of his minor children, so much of his salary, wages, or other income as is necessary to comply with such judgment.

(9) Minimum exemption for wages, salary, and other income.—Any amount payable to or received by an individual as wages or salary for personal services, or as income derived from other sources, during any period, to the extent that the total of such amounts payable to or received by him during such period does not exceed the applicable exempt amount determined under subsection (d).

(b) Appraisal.—The officer seizing property of the type described in subsection (a) shall appraise and set aside to the owner the amount of such property declared to be exempt. If the taxpayer objects at the time of the seizure to the valuation fixed by the officer making the seizure, the Secretary or his delegate shall summon three disinterested individuals who shall make the valuation.

(c) No other property exempt.—Notwithstanding any other law of the United States (including section 207 of the Social Security Act), no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a).

(d) Exempt amount of wages, salary, or other income.—

(1) Individuals on weekly basis.—In the case of an individual who is paid or receives all of his wages, salary, and other income on a weekly basis, the amount of the wages, salary, and other income payable to or received by him during any week which is exempt from levy under subsection (a)(9) shall be—

(A) $75, plus

(B) $25 for each individual who is specified in a written statement which is submitted to the person on whom notice of levy is served and which is verified in such manner as the Secretary shall prescribe by regulations and—

(i) over half of whose support for the payroll period was received from the taxpayer,

(ii) who is the spouse of the taxpayer, or who bears a relationship to the taxpayer specified in paragraphs (1) through (9) of section 152(a) (relating to definition of dependents), and

(iii) who is not a minor child of the taxpayer with respect to whom amounts are exempt from levy under subsection (a)(8) for the payroll period.

For purposes of subparagraph (B)(ii) of the preceding sentence, 'payroll period' shall be substituted for 'taxable year' each place it appears in paragraph (9) of section 152(a).

(2) Individuals on basis other than weekly.—In the case of any individual not described in paragraph (1), the amount of the wages, salary, and other income payable to or received by him during any applicable pay period or other fiscal period (as determined under regulations prescribed by the Secretary) which is exempt from levy under subsection (a)(9) shall be an amount (determined under such regulations) which as nearly as possible will result in the same total exemption from levy for such individual over a period of time as he would have under paragraph (1) if (during such period of time) he were paid or received such wages, salary, and other income on a regular weekly basis.

(As amended Dec. 30, 1969, Pub.L. 91–172, Title IX, § 945(a), 83 Stat. 729; Oct. 4, 1976, Pub.L. 94–455, Title XII, § 1209(a)-(c), 90 Stat. 1709, 1710; Sept. 3, 1982, Pub.L. 97–248, Title III, § 347(a), 96 Stat. 638; July 18, 1984, Pub.L. 98–369, Title VI, § 2661(o)(5), 98 Stat. 1159.)

The Rileys have claimed the following property as exempt:

### SCHEDULE B–4—PROPERTY CLAIMED AS EXEMPT

| | | | |
|---|---|---|---|
| Personal Property | | | $ 8,563.85 |
| Personal Injury Claimed Jean Riley | Intangible | 522(d)(11) | 7,500.00 |
| Homestead | Lots 10 & 11, Block 30, Wingra Addition to the City of Madison, Dane County, Wisconsin | 522(d)(1) & (5) wife | 7,900.00 |
| | | 815.18(1) Husband | 25,000.00 |
| Pension Plan | IRA with Resource Pension Shares Inc. | 522(d)(10) | 1,010.00 |
| Library | 44 E. Mifflin Madison, WI 53703 | 815.18(3) Husband | 400.00 |
| Automobile | 1979 Oldsmobile | 522(d)(2) Wife | 1,200.00 |

Both the Internal Revenue Code and this court's decision in *Driscoll*, make it clear that the IRS' liens have attached to all of the property the Rileys have exempted under Wisconsin law and the Bankruptcy Code, including their homestead. However, the Rileys will be able to exempt under 26 U.S.C. § 6334 necessary wearing apparel, personal property not to exceed $1,500.00 in value, and law books from Mr. Riley's law library not to exceed $1,000.00.

■ Similarly, state statutory exemptions are not effective against WDR tax claims. Income taxes are collectible out of any property owned by the debtor. 28 Op.Att'y Gen 220, 226 (1939). *See* WIS. STAT. § 74.11(3) (1985–86). If a Wisconsin taxpayer is delinquent in paying his taxes, thirty days after the delinquency the WDR may issue a warrant to the sheriff authorizing him to levy upon and sell the taxpayer's real and personal property. WIS. STAT. § 71.13(3)(a) (1985–86). Within five days of the issuance of the warrant, the sheriff shall file a copy of the warrant with the circuit court of his county. WIS.STAT. § 71.13(3)(b) (1985–86). When the warrant is docketed with the clerk's office it becomes a lien upon the real property of the taxpayer against whom it is issued. *See* WIS.STAT. § 71.13(3)(b) (1985–86).

■ The liens against the Rileys property are set out in the chart below. As between the IRS and WDR, the liens have priority according to the date of attachment, the earliest to attach are entitled to be paid before any payment from the proceeds of the property may be applied to any junior lien. *See United States v. New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954).

| Taxing Authority | Date Tax Lien Filed | Tax Due | Interest to Petition Date | Penalty at Petition Date | Kind of Tax, Period |
|---|---|---|---|---|---|
| | | | | | INCOME |
| WDR | 10/25/71 | $ 3,462.07 | $ 6,540.28 | 0 | 1965 |
| WDR | 03/16/72 | 2,130.95 | 3,913.94 | 0 | 1967 |
| WDR | 09/26/73 | 303.36 | 303.02 | 0 | 1972 |
| WDR | 08/29/74 | 1,128.55 | 1,127.41 | 0 | 1973 |

| | | | | | |
|------|----------|-----------|-----------|----------|-----------|
| WDR | 10/31/74 | 135.00 | 135.23 | 0 | 1972 & 74 |
| WDR | 08/27/75 | 1,879.99 | 1,877.60 | 0 | 1974 |
| WDR | 11/10/75 | 78.75 | 97.41 | 13.50 | 1974 |
| WDR | 05/18/78 | 5,855.75 | 6,292.45 | 0 | 1975–76 |
| WDR | 09/07/78 | 1,245.01 | 1,177.50 | 0 | 1977 |
| | total: | 16,219.43 | 21,464.84 | 13.50 | |
| IRS | 01/18/79 | 5,593.93 | 5,547.08 | 2,419.56 | 1976 |
| IRS | 01/18/79 | 6,385.33 | 4,745.98 | 1,282.97 | 1977 |
| | | 11,979.26 | 10,293.06 | 3,702.53 | |
| WDR | 05/16/79 | 3,959.59 | 3,217.51 | 3.00 | 1976–77 |
| WDR | 09/07/79 | 1,705.46 | 1,306.42 | 3.00 | 1978 |
| | | 5,665.05 | 4,523.93 | 6.00 | |
| IRS | 09/26/79 | 11,118.77 | 7,370.22 | 2,373.47 | 1978 |
| WDR | 09/05/80 | 972.27 | 570.38 | 3.00 | 1979 |
| IRS | 09/01/81 | 2,274.96 | 2,019.23 | 1,163.69 | 1979 |
| IRS | 09/01/81 | 4,513.61 | 2,069.93 | 840.99 | 1980 |
| | | 6,788.57 | 4,089.16 | 2,004.68 | |
| WDR | 09/02/81 | 1,328.40 | 540.07 | 3.00 | 1980 |
| WDR | 01/13/82 | 1,801.30 | 598.03 | 3.00 | 1978 |
| IRS | 01/13/83 | 2,029.98 | 615.63 | 425.61 | 1981 |

The nine oldest liens of the WDR were the first to attach, therefore these liens must be satisfied first. The liens secure claims for back taxes, interests, and penalties in the amount of $37,697.77. Because the sale proceeds available to distribute total only $37,318.14; $379.63 of the WDR tax lien filed 09/07/78 will be unpaid by the distribution. That sum and the remainder of tax debt covered by liens solely against the real estate are not secured. Unless these unsecured claims are entitled to priority under 11 U.S.C. § 507 they will be subject to discharge like all other unsecured debts. *In re Frost* at 808.

Only the IRS liens cover personal property which the Rileys have listed in their schedules at a total value of $53,340.68. Of the $53,340.68, the Rileys will be permitted to claim up to $2,500.00 in exemptions in accordance with 26 U.S.C. § 6334. If the Rileys are entitled to the whole $2,500.00 in exemptions, the IRS will be left with a secured claim for $61,557.29 and unsecured claim of $1,253.85. Unless the unsecured claim of the IRS is entitled to priority under the Bankruptcy Code 11 U.S. C. § 507, it will be discharged upon completion of a chapter 13 plan [4] by the Rileys.

4. 11 U.S.C. § 1328 provides:
(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
(1) provided for under section 1322(b)(5) of this title; or
(2) of the kind specified in section 523(a)(5) of this title.

(b) At any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if—
(1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;
(2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the

Under 11 U.S.C. § 507(a)(7)(A)(i) taxes for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition are granted priority in distribution and are nondischargeable. Congress accorded federal, state, and local taxes priority for the reasons explained in *New England Carpet Co.*, 26 B.R. 934, 941 (Bankr.D.Vt.1983):

> A taxing authority is given preferred treatment because it is an involuntary creditor of the debtor. It cannot choose its debtors, nor can it take security in advance of the time that taxes become due. The Bankruptcy Act gives the taxing authority three years to pursue delinquent debtors and obtain secured status. If a debtor filed bankruptcy before that three-year period has run, the taxing authority is given a priority in order to compensate for its temporarily disadvantaged position.

There is an additional reason for the priority. Because it takes a taxing authority time to locate and pursue delinquent tax debtors, taxes are made nondischargeable if they become legally due and owing within three years before bankruptcy. An open-ended dischargeability policy would provide an opportunity for tax evasion through bankruptcy, by permitting discharge of tax debts before a taxing authority has an opportunity to collect any taxes due. The priority is tied to this nondischargeability provision, in order to aid the debtor's fresh start. By granting the nondischargeable tax a priority, more of it will be paid in the bankruptcy case leaving less of a debt for the debtor after the case.

Because the Rileys filed bankruptcy on October 18, 1983, under section 507(a)(7)(A)(i) the following tax claims based on income taxes for the years 1982, 1981, and 1980 will be accorded priority.

| Taxing Authority | Date Tax Lien Filed | Tax Due | Interest to Petition Date | Penalty to Petition Date | Tax Period |
|---|---|---|---|---|---|
| IRS | 09/01/81 | 4,513.61 | 2,069.93 | 840.00 | 1980 |
| WDR | 09/02/81 | 1,328.40 | 540.07 | 3.00 | 1980 |
| IRS | 01/13/83 | 2,029.98 | 615.63 | 425.61 | 1981 |

All unsecured tax claims based on income taxes for years prior to 1980 will be treated as general unsecured claims and may be discharged upon completion of a confirmed plan.

▮ Chapter 13 requires that a debtor provide for the full payment in deferred cash payments of all claims entitled to priority under section 507 and for the full payment of allowed secured claims. 11 U.S.C. § 1322(a)(2) and 11 U.S.C. § 1325(a). In order to satisfy the requirements of chapter 13, the Rileys' plan must be amended to provide first for the full payment of the IRS and WDR's secured tax claims and secondly for the full payment of their priority tax claims. Absent those amendments the provisional confirmation of the Riley's

estate of the debtor had been liquidated under chapter 7 of this title on such date; and
(3) modification of the plan under section 1329 of this title is not practicable.
(c) A discharge granted under subsection (b) of this section discharges the debtor from all unsecured debts provided for by the plan or disallowed under section 502 of this title, except any debt—
(1) provided for under section 1322(b)(5) of this title; or
(2) of a kind specified in section 523(a) of this title.
(d) Notwithstanding any other provision of this section, a discharge granted under this section does not discharge the debtor from any debt based on an allowed claim filed under section 1305(a)(2) of this title if prior approval by the trustee of the debtor's incurring such debt was practicable and was not obtained.
(e) On request of a party in interest before one year after a discharge under this section is granted, and after notice and a hearing, the court may revoke such discharge only if—
(1) such discharge was obtained by the debtor through fraud; and
(2) the requesting party did not know of such fraud until after such discharge was granted.

plan granted prior to the allowance of claims must be withdrawn and voided.

The trustee may submit an order for distribution consistent with the findings of fact and conclusions of law contained herein. The order may provide, in addition, that the debtors be allowed thirty days within which to amend their chapter 13 plan to meet the standards for confirmation articulated herein.